**S.J. GROVES AND SONS COMPANY, Plaintiff,**

v.

**AEROSPATIALE HELICOPTER CORPORATION, Defendant.**

No. C8–85–136.

Supreme Court of Minnesota.

Sept. 20, 1985.

Rehearing Denied Nov. 8, 1985.

Winthrop A. Rockwell, Timothy R. Schupp, Minneapolis, for plaintiff.

William D. Flaskamp, Minneapolis, for defendant.

PETERSON, Justice.

This case involves a question certified to this court by the Federal District Court of Minnesota, arising out of an action involving the crash of a helicopter purchased by plaintiff, S.J. Groves and Sons Company (Groves), from defendant, Aerospatiale Helicopter Corporation (Aerospatiale).

In May 1977, Groves, a major highway contractor, contracted with the government of Bolivia to build a 32-mile, asphalt-paved highway, one of the highest altitude roadway construction projects ever undertaken, from La Paz to Cotapata, Bolivia. Groves had previously ordered from Aerospatiale an Aerospatiale Lama helicopter, manufactured by Societe Industrialle Aerospatiale, a French corporation of which Aerospatiale is the United States subsidiary. Groves received the helicopter on June 14, 1977, and shipped it from the United States to Bolivia, where it became operational in August 1977.

On April 30, 1981, the helicopter was involved in an accident while returning to the Bolivia construction site after having delivered a load of blasting powder to a base camp located in an inaccessible area. The pilot was killed, and the helicopter was badly damaged. A passenger was injured but survived the crash. In addition to damage to the helicopter, Groves lost the use of the helicopter and suffered other incidental and consequential damages, including the loss of a small amount of other property—a high frequency aircraft radio and two pilot communication headsets which Groves had purchased separately and installed in the helicopter.

Groves contends that the crash occurred because of a defect in the helicopter. Specifically, Groves alleges that the fatigue failure of a component part in the collective pitch control mixing unit of the helicopter eliminated the pilot's ability to control the pitch of the rotor blades. Once the rotor blades lost their pitch, there was no force acting to keep the helicopter aloft, and it crashed.

Following the crash, the heirs of the pilot brought a wrongful death action against Aerospatiale, alleging negligence and strict liability. That action has been settled. On May 11, 1984, Groves commenced suit against Aerospatiale in United States District Court, Fourth District of Minnesota, seeking recovery for damage to the helicopter, loss of use, lost profits, and other incidental and consequential damages, under theories of breach of warranty, negligence, and strict liability. Aerospatiale answered that Groves' breach of warranty claim is barred by the statute of limitations and that Groves' negligence and strict liability claims are precluded by this court's decision in *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981). A motion by Groves to strike these defenses was denied. Both parties then moved for summary judgment on issues relating to negligence and strict liability. The federal district court denied these motions

pending resolution of the following question of "uncertain" state law, certified to this court on January 21, 1985:

Can economic losses arising from the crash of a helicopter be recovered under theories of negligence or strict liability assuming:

1.) The crash was a sudden and calamitous event;

2.) The pilot was killed and a passenger was injured as a result of the crash;

3.) The party making the claim for economic loss is not the party which suffered the injury or death in the crash; and

4.) The party making the claim for economic loss did suffer but a nominal amount of damage to other property.

Answering this certified question involves delineating the permissible overlap of strict liability, negligence, and breach of warranty, an issue we first addressed in *Superwood*.[1] Superwood purchased a hot plate press manufactured by Siempelkamp and used it without incident for 21 years, until the cylinder failed and could not be repaired. Seeking recovery of lost profits and damage to the press, Superwood brought an action based on negligence, strict products liability, breach of warranty, and breach of contract. We held that Superwood's remedies lay solely in contract, not in tort, stating the general rule that "economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability." *Id.* at 162.

The rationale and public policy objectives underlying this general rule arise, as we recognized in *Superwood*, out of a basic principle: tort law and the Uniform Commercial Code serve distinct purposes, and

neither will be permitted to pre-empt the other. The U.C.C. was enacted to govern and clarify the rights and remedies of parties to commercial transactions. As part of its risk allocation scheme, it permits parties to limit and modify by contract the remedies available for commercial losses. Minn. Stat. § 336.2–719 (1984). Thus, to allow unlimited tort liability in all commercial transactions regardless of contractual limitation "would totally emasculate these provisions of the U.C.C.," circumventing legislative intent. *Id.* at 162. On the other hand, strict liability in tort "developed in large part to fill gaps in the law of sales with respect to consumer purchasers," *id.*, gaps that exist because of contractual requirements of privity and notice, and, more importantly, because individual consumers lack the bargaining power to avoid accepting contracts that unfairly limit their remedies. Our general rule as expressed in *Superwood* arose out of our conclusion that "[l]imiting the application of strict products liability to consumers' actions or actions involving personal injury will allow the U.C.C. to satisfy the needs of the commercial sector and still protect the legitimate expectations of consumers." *Id.*

 As we indicated in *Superwood*, as long as an individual seeks economic losses arising out of personal injury or damage to other property, recovery lies outside the realm of warranty and accordingly the losses are compensible in tort. *See also Star Furniture Co. v. Pulaski Furniture Co.*, 297 S.E.2d 854, 857–59 (W.Va.1982); *Cloud v. Kit Manufacturing Co.*, 563 P.2d 248, 250 (Alaska 1977); *Shields v. Morton Chemical Co.*, 95 Idaho 674, 677, 518 P.2d 857, 859 (1974). In this case, however, although personal injuries arose from the same occurrence, Groves is seeking economic loss arising only from damage to the product itself, not from the personal inju-

---

1. It should be noted that the contract between the parties contains a clause stating that warranty provisions are "in lieu of all liabilities or obligations of Seller for damages including, but not limited to, all consequential damages, all loss, damage, or expense arising out of or in connection with the use, loss of use, or perform-

ance of Seller's products * * *." This provision is not mentioned in the certified question or the statement of relevant facts, nor is the contract a part of the record submitted to us. Thus, the issue of what effect this provision has upon Groves' recovery in tort is not before us.

ry.[2] What Groves seeks is recovery for the product's failure to live up to Groves' expectations as to its suitability, quality, and performance—even if a tort injury arose out of the same occurrence, Groves did not suffer it, but lost only what it purchased. This type of damage—to the defective product itself—is not ordinarily recoverable in tort because a product's unsatisfactory performance is the type of problem that warranty law and the U.C.C. were designed to remedy.

Moreover, there are no policy reasons compelling us to allow additional recovery in tort. It is clear that this certified question comes to us in the context of a commercial plaintiff with economic bargaining power substantially equivalent to that of the seller. As such, Groves had the opportunity to bargain both as to the product's specifications and as to the risk of loss from defects in it. This power to negotiate means that Groves could have bargained for more extensive warranty protection and consequently any failure of coverage is attributable not to "gaps" in consumer remedies that tort remedies should correct but, rather, to the plaintiff's conscious choice. As the Fourth Circuit Court of Appeals noted in *Purvis v. Consolidated Energy Products Co.*, 674 F.2d 217, 221 (4th Cir. 1982) (footnotes omitted):

> [T]he commercial buyer can protect himself by negotiation. He can induce the seller to accept, for a price, risks which the buyer cannot bear efficiently himself. Conversely, by relieving the seller of responsibility for product defects, the commercial buyer is likely to obtain the product at a lower price. When a buyer who has taken advantage of that opportunity invokes strict products liability with respect to a risk that was allocated to him by contract, he in effect asks the law to accord him a better bargain than he purchased.

When the plaintiff, like Groves, is a commercial entity endowed with bargaining power, any considerations of fairness and deterrence that might in other situations lead us to allow recovery in tort for these types of damages have no effect.

Groves urges that it should be allowed tort recovery for damage to the defective product itself, notwithstanding its status as a commercial plaintiff, because the conflict between tort and contract should be resolved by distinguishing between losses resulting from a "qualitative defect" and those resulting from a "sudden and calamitous occurrence," regardless of the type of damage or the status of the plaintiff. For courts adopting this distinction, the line drawn for purposes of recovering for damage to the defective product itself typically falls between damage resulting merely from deterioration, internal breakage, depreciation, or failure to live up to expectations and damage that is "sudden and calamitous," resulting from a violent or hazardous accident. *See Sanco Inc. v. Ford Motor Co.*, 579 F.Supp. 893 (S.D.Ind.1984); *see also Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1169–70, 1173 (3rd Cir.1981); *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 81, 61 Ill.Dec. 746, 752, 435 N.E.2d 443, 449 (1982); *Industrial Uniform Rental Co., Inc. v. International Harvester Co.*, 317 Pa.Super. 65, 72, 463 A.2d 1085, 1089–91 (1983); Bland & Watson, *Property Damage Caused by Defective Products: What Losses are Recovera-*

---

**2.** The certified question indicates that in addition to personal injury, a "nominal amount" of other property was damaged. Specifically, Groves claims that "[a] small amount of other property was also damaged or destroyed in the crash, including a high frequency aircraft radio and two pilot communication headsets, all of which had been purchased separately by S.J. Groves and installed by S.J. Groves after the helicopter was delivered by Aerospatiale." We have previously recognized that to allow a party to sue in tort to recover substantial damages because of relatively minor damages to "other property" "would thwart the policy implications of *Superwood*," *Minneapolis Society of Fine Arts v. Parker-Klein Associates Architects, Inc.*, 354 N.W.2d 816, 820 n. 4 (Minn.1984), and although the record does not indicate the relative value of the "other property," Groves admits it is a "small amount" and as such is presumably insufficient to bootstrap Groves' claims for tort recovery of all of its damages. *See also, Northern States Power Co. v. International Tel. & Tel. Corp.*, 550 F.Supp. 108, 111 (D.Minn.1982).

*ble?*, 9 Wm. Mitchell L.Rev. 1 (1984). Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966). This "violent occurrence" distinction stems from Restatement (Second) of Torts § 402A (1965), which provides for recovery for physical harm caused by a "product in a defective condition unreasonably dangerous to the user or consumer," and resolution turns on "whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim." *Pennsylvania Glass*, 652 F.2d at 1173. Accordingly, damage to the product itself caused by a "qualitative defect" is recoverable only under the U.C.C. and contract law, whereas recovery in tort is allowed for damage to the product arising from a "sudden and calamitous occurrence."

This "sudden and calamitous" distinction itself causes us some concern. "Calamitous" is a nebulous word, incapable of precise definition. Determining whether damage resulted from a "sudden and calamitous occurrence" as opposed to a "qualitative" defect is certain to present numerous problems. Use of such a distinction, moreover, is arbitrary. Almost every "calamitous" occurrence resulted from the type of internal breakage or gradual deterioration that could just as well have become a "qualitative" defect; often all that distinguishes the two is the time of occurrence, not the type of defect. For example, a serious defect in the engine of a plane is merely "qualitative" if it matures while the plane is on the ground but "catastrophic" if it matures while the plane is in the air. Nonetheless, the defect is the same and the losses stemming from it may be identical.

We do not by this decision, or the foregoing observations, wholly foreclose future consideration of the proposed distinction if presented in other, more compelling circumstances than presented in this case. It is sufficient for today's decision that Groves is a commercial entity possessing bargaining power substantially equal to that of the seller, clearly capable of negotiating a warranty against the damage the

defective product caused to itself, whether or not considered as sudden and calamitous.

We accordingly answer the certified question in the negative.

COYNE, J., took no part in the consideration or decision of this case.

SCOTT, Justice (dissenting).

I respectfully dissent. The majority misinterprets *Superwood*. *Superwood* allows recovery of economic losses that arise out of commercial transactions "involving personal injury or damage to other property." The majority reads this language to prevent recovery of those types of damages, even in cases involving "sudden and calamitous events." Such a holding puts Minnesota very much in the minority. *Superwood* never intended such a result.

*Superwood* should be interpreted to allow recovery for certain "accident-type" injuries. For example, in *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308 (Texas 1978), the Texas Supreme Court adopted and applied the following reasoning of Dean Page Keeton:

> A distinction should be made between the type of "dangerous condition" that causes damage only to the product itself and the type that is dangerous to other property or persons. A hazardous product that has harmed something or someone can be labeled as part of the accident problem; tort law seeks to protect against this type of harm through allocation of risk. In contrast, a damaging event that harms only the product should be treated as irrelevant to policy considerations directing liability placement in tort. Consequently, if a defect causes damage limited solely to the property, recovery should be available, if at all, on a contract-warranty theory.

*Id.* at 312 (*quoting* Keeton, *Annual Survey of Texas Law, Part I: Private Law: Torts*, 32 Sw.L.J. 1, 5 (1978)). The reasoning of the Texas court indicates that its

requirement that there be damage to other property or personal injury is simply a shorthand way of determining whether a defect is part of the "accident problem" against which tort law seeks to protect.

Most courts resolve the conflict between tort and contract law by distinguishing between "qualitative defects" and those defects which result from a "sudden and calamitous occurrence." This distinction, essentially based upon the type of occurrence caused by the defect, was first recognized in *Seely v. White Motor Company*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), from which the *Superwood* rule was derived. For most courts adopting *Seely*, the line drawn between contract and tort damages for purposes of recovering for damage to the product itself typically falls between damage resulting merely from deterioration, internal breakage, depreciation, or failure to live up to the expectation and damage which is sudden and calamitous, resulting from a violent or hazardous accident.

*Superwood* was intended to be interpreted utilizing this theory. In fact, we recognized the merit of allowing recovery based primarily upon the type of accident in *Minneapolis Society of Fine Arts v. Parker-Klein Assoc. Architects, Inc.*, 354 N.W.2d 816 (Minn.1984), by stating:

> We need not determine here whether such damages, under certain circumstances not here existing, will ever be recoverable in tort. In passing, we note that other courts have focused not on whether damage has occurred to "other property," but instead on the nature of the defect and the manner in which the damage occurred. * * * Where the damage results from deterioration, internal breakage, depreciation, or failure to live up to expectation, these courts would allow recovery only on a contract or warranty theory. Where the damage results from hazardous conditions or a sudden and calamitous occurrence, however, these courts would allow recovery under a tort theory. Their rationale for this distinction is that tort law imposes a duty on manufacturers to produce safe prod-

ucts, regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself. * * * Contract or warranty law, on the other hand, has been traditionally concerned with redress of a purchaser's disappointed expectations.

354 N.W.2d at 821 (citations omitted).

The question certified to us asks whether "economic losses" arising from the crash of the helicopter can be recovered under strict liability or negligence. I would answer the certified question in the affirmative. A reading of *Superwood* allowing Groves to recover for damage to the helicopter itself in this case is consistent with the clear majority view, as well as with our previous statement in *Society of Fine Arts*. Groves should also be allowed to recover for lost profits and loss of use damages resulting from the damage to the helicopter. Such losses resulted from a "sudden and catastrophic occurrence"—a tortious event— and thus should also be compensable in tort.

YETKA, Justice (dissenting).

I join in the dissent of Justice SCOTT.