**CARGILL, INCORPORATED, Plaintiff,**

**v.**

**PRODUCTS ENGINEERING COMPANY, a/k/a Products Engineering Co., Inc., Defendant.**

**Civ. No. 4-83-83.**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 12, 1986.

Kurtis A. Greenley and David A. Allgeyer, Lindquist & Vennum, Minneapolis, Minn., for plaintiff.

Robert M. Austin, Austin, Roth & Associates, Minneapolis, Minn., for defendant.

**1494**

## MEMORANDUM OPINION
## AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Cargill, Inc. brought this action for damages against Products Engineering Co. (PECO), alleging breach of contract (count 1), negligence (count 2), breach of expressed warranty (count 3), breach of implied warranties (counts 4 and 5) and strict liability (count 6). The dispute results from the collapse of a grain loader purchased by Cargill from PECO. The grain loader was one of four manufactured in Seattle by PECO, a Washington corporation, expressly for Cargill and delivered to Cargill, a Minnesota corporation, for use in Louisiana, where the collapse occurred.[1] Cargill seeks damages for harm done to the grain loader itself and for economic injury caused by the grain loader's collapse. The matter is now before the court on PECO's motion for summary judgment. PECO claims that the theory of strict liability is inapplicable to litigation between sophisticated companies dealing at arm's length, that plaintiff may not seek consequential damages and that plaintiff's contract claims are barred by the statute of limitations.

*Background*

On a motion for summary judgment, the court takes the plaintiff's assertions of fact as true.

While constructing a grain handling and ship-loading facility at Terre Haute, Louisiana, in the early 70s, Cargill purchased four shiploaders for loading grain from conveyors onto ships. PECO, which held itself out as an expert in the design and manufacture of such equipment, solicited a contract with Cargill under which PECO designed and built the shiploaders. Cargill provided "general operating parameters," but PECO "assumed full responsibility for the design and manufacture of the units." PECO delivered the units from its plant in Washington and provided field engineers to supervise its erection in Louisiana. The

erection was completed in November 1976. The five-story shiploader "slewed" or rotated on a large horizontal "slew bearing," bolted to the top of the gantry deck with 36 "slew bearing bolts."

In or before December 1977, Cargill discovered that some of these bolts were breaking or loosening. When advised of this problem, PECO recommended tightening the bolts. When the problem continued in 1978 and 1979, PECO asserted that Cargill had maintained the shiploader poorly. Cargill took special maintenance measures, but the problem continued. In February 1979, Cargill asked PECO to send a representative to Terre Haute to investigate the problem. PECO sent a shop foreman, who concluded that the trouble resulted from maintenance problems. In January 1980, during normal operating activity, several slew bolts fractured, the back side of the slew lifted and the loader collapsed.

PECO characterizes the cause of the collapse as poor maintenance and bolt problems, but Cargill characterizes the cause as significant design and engineering defects. Cargill asserts that PECO's structural calculations were incomplete and ignored necessary structural engineering considerations and that subsequent calculations were similarly inadequate, avoiding necessary reevaluation of the total design. Cargill asserts that the shiploader itself was damaged and that it has suffered substantial economic injury as a result of the shiploader's unavailability after the collapse.

*Discussion*

In passing upon a motion for summary judgment, the court must view the facts in the light most favorable to the opposing party and give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. *Ralph's Distributing Co. v. AMF, Inc.*, 667 F.2d 670 (8th Cir.1981); *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir.1980). The court

---

1. Cargill filed identical complaints in this court and in the Western District of Washington. PECO sought an order dismissing the Minnesota action and allowing the Washington action to proceed, or in the alternative, for a change of venue. The court denied this motion in an order dated December 14, 1983. The Washington action has since been dismissed.

may grant a motion for summary judgment only if the pleadings and affidavits show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The opposing party may not merely rest upon the allegations or denials of the party's pleadings, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981).

## A. Tort Claims

Cargill alleges that PECO is strictly liable for harm caused by its "defective [and] unreasonably dangerous shiploader. It seeks damages in negligence and strict liability for injury to the shiploader itself and consequential damages. PECO argues that Minnesota law does not permit recovery in strict liability or negligence where large commercial parties have allocated risks by contract. Cargill seeks to distinguish the cases on which PECO relies, but argues more strenuously that Washington law, rather than Minnesota law applies to the tort claims in the instant action,[2] and that Washington law bars neither the action in strict liability nor Cargill's recovery of consequential damages.

■ While sitting in diversity, a federal court should apply the conflicts law of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The threshold inquiry then is whether the forum's law and the law of another interested state would produce conflicting results. *E.g., Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408, 412 (1973).

■ Under Minnesota law, "a commercial plaintiff with economic bargaining power substantially equivalent [or superior] to that of the seller" cannot seek recovery in tort for "economic loss arising only from damage to the product itself, not from ... personal injury." *S.J. Groves and Sons Co. v. Aerospatiale Helicopter Corp.*, 374 N.W.2d 431, 434 (Minn.1985). *See also Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981) ("economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability.") The court is not persuaded by Cargill's efforts to distinguish *Groves* and *Superwood*. It is clear that Minnesota law would require this court to grant summary judgment to PECO on Cargill's strict liability and negligence claims.[3]

■ On the question of strict liability, Washington law is less clear. The Washington courts have apparently never directly addressed the availability of strict liability in litigation between large commercial entities which have allocated risk by contract. The Ninth Circuit Court of Appeals has concluded that Washington does not permit such recovery in strict liability, however. *See S.A. Empressa de Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 754 (9th Cir.1981). (No conflict exists between California and Washington law; under either state's law, strict liability does not apply between large corporate enterprises which have allocated risks by contract.) In the absence of any Washington state cases expressly or implicitly holding to the contrary, and in light of the Ninth Circuit's superior experience with Washington law, this court concludes that Washington law would not permit Cargill to recover from PECO in strict liability.[4] Ac-

---

2. The parties apparently agree that Minnesota law applies to the contract claims.

3. Cargill seeks recovery for damages to the loader and resulting economic loss, not for "personal injury or damage to other property." Accordingly, no part of Cargill's negligence claim is cognizable under Minnesota law. *See also American Home Assurance Co. v. Major Tool and Machine, Inc.*, 767 F.2d 446 (8th Cir.1985)

(interpreting "personal injury or damage to other property"); *Society of Fine Arts v. Parker-Klein Associates Architects, Inc.*, 354 N.W.2d 816 (Minn.1984) (same).

4. *See also Berg v. General Motors Co.*, 87 Wash.2d 584, 555 P.2d 818, 823 (1976) (" 'personal or property damage' as a limitation only inheres in strict liability.") (dicta).

cordingly, there is no conflict of law on this issue, and PECO is entitled to summary judgment.

It does appear, however, that there is a conflict between Washington and Minnesota law concerning whether Cargill may recover consequential damages for negligence. The Washington Supreme Court has held that an injured purchaser is not barred from seeking damages for solely economic loss in a tort action. *Berg v. General Motors Co.*, 87 Wash.2d 584, 555 P.2d 818 (1976). *Berg* is not entirely on point because it did not involve any contractual effort to limit damages. Nonetheless, it appears that the court should consider the five "choice-influencing considerations" set out in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408, 412 (1973).

■ *Milkovich* adopted a five point methodology from Professor Leflar's influential article, *Choice Influencing Considerations in Conflicts Law*, 41 N.Y.U. L.Rev. 267 (1966). In *Milkovich* and in later cases, however, the Minnesota Court has stressed that only the last two of these considerations, the advancement of the forum's governmental interests and the application of the better rule of law, are relevant in tort cases. *Milkovich*, 203 N.W.2d at 412. *See also Bigelow v. Halleran*, 313 N.W.2d 10, 12 (Minn.1981); *Schwartz v. Consolidated Freightways Corp.*, 300 Minn. 487, 221 N.W.2d 665, 668 (1974).[5]

■ Cargill correctly argues that the interests of the forum are not always furthered by the application of the forum's law. *See, e.g., Bigelow v. Halloran*, 313 N.W.2d 10 (Minn.1981). Cargill's assertion that Minnesota has no interest in foreclosing its recovery of economic damages in tort is another matter, however. The Minnesota Supreme Court has repeatedly expressed its concern that the principles and purposes of tort law and contract law remain distinct. Unlimited tort liability in commercial transactions would have the effect of preempting contract law and circumventing legislative intent. *S.J. Groves*, 374 N.W.2d at 433 (citing *Superwood*, 311 N.W.2d at 162). It is the strong policy of Minnesota that a large commercial entity such as Cargill should not be heard to "ask[ ] the law to accord [it] a better bargain that [it] purchased." *S.J. Groves*, 374 N.W.2d at 434 (citations omitted).[6] Minnesota has an interest in ensuring that Minnesota corporations are held to the rule that economic loss can be recovered upon bargained-for contract provisions but not tort law. Advancement of the forum's governmental interests favors Minnesota law.

Availability of tort remedies for economic injuries is an issue on which reasonable states may differ. *Compare, e.g., Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965) (available in strict liability) and its progeny with *Seely v. White*

---

**5.** Plaintiff relies on *Hague v. Allstate Insurance Co.*, 289 N.W.2d 43, 48 (Minn.1979), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), to argue that all five factors are relevant to cases involving both tort and contract issues. In *Hague*, the contested question concerned uninsured motorist coverage, and the court noted "the peculiar hybrid nature of the problems involved in automobile liability insurance cases." *Id.* In the instant case, the only conflicts issues relate to pure negligence questions. (The court has already determined that there is no conflict of laws on strict liability and it is undisputed that Minnesota law governs the contract issues.)

Even if the court were to consider the other three factors, at least two would favor the defendant's position. Maintenance of interstate order involves whether the forum has sufficient contacts with the facts in issue. As plaintiff

successfully asserted in arguing an earlier motion in this case, there are quite significant contacts with Minnesota. The third *Milkovich* factor, simplification of the judicial task, strongly favors applying Minnesota law. In most situations, this consideration is of no importance— federal courts are quite capable of applying the law of the various states. Federal courts are properly reluctant to decide unsettled questions of state law, however, even when the law at issue is the law of the forum and the trial court has had extensive experience with it. In this case the law of Minnesota is quite clear, while the law of Washington is not.

**6.** The fact that the contract provides that Minnesota law governs contract disputes is evidence that Cargill, a Minnesota corporation, was far from powerless in its dealings with PECO, a Washington corporation.

*Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965) (not available in strict liability), and its more abundant progeny. In *Berg v. General Motors Corp.*, 87 Wash.2d 584, 555 P.2d 818 (1976), the Washington Supreme Court expressly rejected various arguments for denying tort recovery for economic injury, although it did not squarely consider the arguments on which Minnesota based *Superwood* and *S.J. Groves*. With all due respect, this court finds that Minnesota law is the better law as it pertains to large commercial entities dealing at arms length with each other, able to negotiate allocation of risk. While the particular failure of the shiploader now at issue may not have been foreseeable, there is no question that both parties could have foreseen the possibility of major problems with a huge and complex device specifically designed and built by PECO for Cargill and with no track record. Cargill should not now have recourse to tort law to obtain a better bargain than the one it negotiated. Application of the better law also favors Minnesota law in this instance.

Under Minnesota law, Cargill is not entitled to recovery in tort for damages to the subject property or for consequential damages. These are the only damages sought in the complaint for negligence. Accordingly, PECO is entitled to summary judgment, and count 2 should be dismissed.

### B. Contractual Limitation of Liability

Addendum A to the contract between Cargill and PECO includes the following warranty language:

GUARANTEE:

The Manufacturer guarantees that the equipment covered by this Proposal will be free from defects in material or workmanship and will be capable of safely and properly handling the rated loads at the speeds specified herein, when properly installed on a suitable run way or foundation under the supervision of one of our experienced field engineers.

The Manufacturer will furnish free of charge F.O.B. point of manufacture, replacements for any parts of such equipment which prove defective within one year from date it was first placed in service, such service to begin within 90 days after delivery of the equipment at the site of erection. The Manufacturer will in no event be liable for any contingent or consequential damages or charges resulting from defects in or failure of such parts, or from any use made of the equipment quoted herein.

Further, the guarantees made herein are conditioned upon proper use, maintenance and operation of the equipment and exclude ordinary wear and negligence on the part of the owner or operator. Before replacing free of charge any parts claimed defective, we may request that such parts be submitted for our inspection, F.O.B. shops where manufactured.

PECO argues that the limitation in the contractual warranty effectively bars any recovery of consequential damages, and that such limitation is permitted under *Minn.Stat.* § 336.2–719. Cargill does not dispute that § 336.2–719 permits limitations of damages, but argues that PECO's purported limitation fails on two alternative grounds. First, the Addendum limits liability for damages "resulting from defects in or failure of ... parts [of the grain-loader]", while the defects Cargill alleges arise from "improper design, failure to warn of improper design, and from the unavailability of the equipment to load ships." The court need not pass on this point, however, because Cargill's second argument presents an issue of fact which cannot be decided at this stage in the litigation. Cargill argues that even if the language of Addendum A were sufficient to limit damages, the limitation would be ineffective because the warranty would fail of its essential purpose.

Under *Minn.Stat.* § 336.2–719(1), parties to a contract may limit or alter the measure of damages recoverable. Such limitation may be found unenforceable, however, where "circumstances cause an exclusive or limited remedy to fail of its essential purpose." *Minn.Stat.* § 236.2–719(2). Under such circumstances, § 336.-2–719(2) provides that the parties have re-

course to the usual UCC remedies. Whether the circumstances cause the remedy to fail in its essential purpose turns on the particular facts of the case. *See, e.g., Soo Line Railroad Co. v. Fruehauf Co.*, 547 F.2d 1365, 1370–1373 (8th Cir.1977); *Northern States Power v. International Telephone and Telegraph Corp.*, 550 F.Supp. 108, 113 (D.Minn.1982). Accordingly, defendant's motion to dismiss plaintiff's contract claims insofar as they seek consequential damages must be denied.

### C. Statutes of Limitations

Finally, PECO asserts that Cargill's contract claims are barred by Minnesota's four year statute of limitations. *Minn.Stat.* § 336.2–725(2) provides that a cause of action under the UCC "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when the tender of delivery is made." PECO asserts that the goods were delivered and in operation in 1976 and that the statute of limitations therefore ran long before the commencement of this litigation.

Cargill argues that its claims for breach of contract were timely filed under two theories: First, PECO not only breached the original 1973 contract, but also a February 1979 contract which was primarily a contract for services and therefore covered by the six year statute of limitation of *Minn.Stat.* § 541.05. PECO has not contested the existence of a February 1979 contract or Cargill's characterization of that contract as one for services. Accordingly, it would be inappropriate to bar Cargill's action in contract for any damages arising from the 1979 contract.

■ Cargill's argument that none of its contract claims are time-barred must fail, however. Cargill argues that Minnesota recognizes that causes of action for breach of contract accrue at the time when an action can be commenced and that an action could not have been commenced until the collapse of the loader. It is well-settled that a "cause of action for breach of contract accrues immediately on a breach, though actual damages resulting therefrom do not occur until afterwards." *E.g., Ba-*

*chertz v. Hayes Lucas Lumber Co.*, 201 Minn. 171, 275 N.W. 694, 697 (1937). Moreover, § 336.2–725 itself provides that the action accrues at the time of the breach "regardless of the aggrieved party's lack of knowledge of the breach." The statute of limitations has run for any contract claims arising from Cargill and PECO's original contract.

Cargill also provides two arguments for the proposition that its claims for breach of warranty are not barred. First, the statute of limitations for Cargill's warranty claims is tolled by the doctrine of equitable estoppel because Cargill reasonably relied on PECO's misrepresentation that there were no design flaws. Second, there is an exception to the rule that breaches of warranty accrue upon tender of delivery: "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Minn.Stat.* § 336.2–725.

■ The defense of equitable estoppel turns on questions of fact. *See, e.g., Northern Petrochemical v. U.S. Fire Insurance Co.*, 277 N.W.2d 408, 410 (Minn. 1979). On the basis of the papers submitted by counsel, the court cannot say that there is no material issue of fact for trial, and summary judgment is therefore improper on this point. Because the court has determined that defendant is not entitled to summary judgment on the warranty claims, it is unnecessary to reach plaintiff's alternative argument on those claims.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Defendant's motion for summary judgment on count 6, alleging strict liability, is granted, and count 6 is dismissed.

2. Defendant's motion for summary judgment on plaintiff's claim for consequential damages is granted as to count 2

(negligence), and count 2 is dismissed. Defendant's motion for summary judgment on plaintiff's claim for consequential damages is denied in all other respects.

3. Defendant's motion to dismiss plaintiff's contract and warranty claims on the basis of the statute of limitations is granted insofar as it relates to the contract claims arising from the purchase of the shiploader, but is denied in all other respects.