T.H.S. NORTHSTAR ASSOCIATES, LIMITED PARTNERSHIP, a Minnesota Limited Partnership, Plaintiff,

v.

W.R. GRACE & COMPANY, a Connecticut Corporation, Successor in Interest to Western Mineral Products Corporation and Zonolite Company; H & A Construction Corporation, a New York Corporation, Successor in Interest to SprayCraft Corporation, formerly known as Asbestospray Corporation; Keene Corporation, a New York Corporation, Successor in Interest to Baldwin–Hill Company, Baldwin–Ehret–Hill Company and Keene Building Products Corporation; Keene Building Products Corporation, a Delaware Corporation; National Gypsum Company, a Delaware Corporation, Successor in Interest to Gold Bond Building Products Corporation; United States Gypsum Company, a Delaware Corporation; The Celotex Corporation, a Delaware Corporation, Successor in Interest to Phillip Carey Mfg. Co., Phillip Carey Corporation, Briggs Mfg. Co., and Panacon Corporation; Carey Canada, Inc., a Canadian Corporation, Successor in Interest to Carey Canadian Mines; Pfizer Genetics, Inc., a Delaware Corporation; Basic, Inc., an Ohio Corporation; Turner & Newall Limited, a foreign Corporation; and United States Mineral Products Company, a New Jersey Corporation, Jointly and Severally, Defendants.

Civ. No. 3–87–676.

United States District Court, D. Minnesota, Third Division.

June 12, 1991.

Richard A. Saliterman, Saliterman & Alden, Minneapolis, Minn., Michael B. Serling, Michael B. Serling, P.C., Birmingham, Mich., Philip J. Goodman, Thrun, Maatsch & Nordberg, P.C., Lansing, Mich., Floyd E. Siefferman, Jr., Minneapolis, Minn., for T.H.S. Northstar Associates.

Peter Bologna, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, Minn., for Basic, Inc.

Richard N. Jeffries, Thomas Olson, Jeffries, Olson & Flom, P.A., Moorhead,

Minn., for the Celotex Corp. and Carey Canada, Inc.

Robert D. Brownson, Lasley, Gaughan, Stich & Angell, P.A., Minneapolis, Minn., for H & A Const. Corp.

David Herr, Maslon, Edelman, Borman & Brand, Minneapolis, Minn., for Keene Corp. and Keene Building Products Corp.

Thomas V. Seifert, Marianne E. Durkin, Head, Hempel, Seifert & Vander Weide, Minneapolis, Minn., for National Gypsum Co.

Thomas H. Shiah, Thomas H. Shiah, Ltd., Minneapolis, Minn., for Pfizer Genetics, Inc.

Robert V. Atmore, Lindquist & Vennum, Minneapolis, Minn., for Turner & Newall PLC.

Sandra Wallace, Zelle & Larson, Minneapolis, Minn., for U.S. Gypsum Co.

Timothy P. Tobin, Gislason, Dosland, Hunter & Malecki, Minnetonka, Minn., for U.S. Mineral Products Co.

John C. Childs, Donald M. Lewis, G. Marc Whitehead, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, Minn., and Joseph L. Cotter, Margaret R. Hinkle, Goodwin, Proctor & Hoar, Boston, Mass., for W.R. Grace & Co.

## MEMORANDUM

RENNER, District Judge.

In 1986, plaintiff T.H.S. Northstar Associates ("Northstar") purchased the Northstar Center ("the Center") in downtown Minneapolis. Northstar alleges that the Center is contaminated by asbestos and has brought suit against defendant W.R. Grace & Co.—Conn. ("Grace"),[1] a former manufacturer of asbestos-containing products that were applied to portions of the Center during construction that occurred between 1962 and 1967. In its eleven-count complaint, plaintiff asserts that Grace is liable for the cost of abatement of the asbestos hazard in the Center.

At the oral hearing on defendants' motion for summary judgment, the Court ruled from the bench and allowed plaintiff to proceed with its claims of fraud and misrepresentation, breach of implied warranty of merchantability, and nuisance. The Court granted defendant summary judgment as to the counts alleging restitution, breach of express warranty, and breach of implied warranty of fitness for a particular purpose.[2]

The Court took under advisement defendant's motion for summary judgment on plaintiff's claims of negligence and strict liability and requested supplemental briefing on how the economic loss doctrine, articulated by the Minnesota Supreme Court in *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981), applies to the facts of this case. Since the hearing, the Minnesota Supreme Court has issued another opinion relevant to the economic loss doctrine, *Hapka v. Paquin Farms, et al.*, 458 N.W.2d 683 (Minn.1990).[3]

■ Defendant argues that *Superwood* and *Hapka* preclude plaintiff from any recovery under tort theories of negligence or strict liability. It argues that the alleged injuries, even if characterized as damage to other property, constitute economic loss for which the sole remedies are those provided by the Uniform Commercial Code. Plain-

1. Plaintiff also named National Gypsum Company as a defendant. However, the Court has granted summary judgment to National Gypsum based on plaintiff's failure to create an issue of fact that a National Gypsum asbestos-containing product was used in the Northstar Center.

2. Plaintiff agreed to the dismissal of counts alleging conspiracy, concert of action, enterprise liability and alternative liability.

3. On June 4, 1991, Governor Arne Carlson signed legislation that appears to have the effect of overturning the Minnesota Supreme Court ruling in *Hapka* as well as the bulk of *Super-*

*wood*'s progeny applying the damage to other property exception. This statute provides:

(a) Economic loss that arises from a sale of goods that is due to damage to tangible property other than the goods sold may be recovered in tort as well as in contract, but economic loss that arises from a sale of goods between parties who are each merchants in goods of the kind is not recoverable in tort. 1991 Minn.Laws Ch. 352.

Because the Court finds the damage here does not constitute economic loss, the new law does not directly affect this decision.

tiff contends that the damages incurred by the presence of asbestos in the Northstar Center are not economic losses at all, thus making *Superwood* and *Hapka* inapplicable.

In its 1981 *Superwood* decision, the Minnesota Supreme Court held:

> *economic losses* that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability.

*Superwood*, 311 N.W.2d at 162 (emphasis added). *Superwood* generated much caselaw, albeit unsuccessful, attempting to recover economic losses through the "damage to other property" exception. *See Minneapolis Society of Fine Arts v. Parker–Klein Assoc. Architects, Inc.,* 354 N.W.2d 816, 819 (Minn.1984); *S.J. Groves and Sons Co. v. Aerospatiale Helicopter,* 374 N.W.2d 431, 433 (Minn.1985), and *Valley Farmer's Elevator v. Lindsay Bros.,* 398 N.W.2d 553, 555 (Minn.1987). Responding to this "steady stream of litigation," the Minnesota Supreme Court concluded in *Hapka* that:

> the Uniform Commercial Code must control exclusively with respect to damages in a commercial transaction which involves property damage only, and any statement or implication to the contrary in *Superwood* and its progeny is hereby expressly overruled.

*Id.* The Court agrees with defendant that if the plaintiff's alleged injuries constitute economic losses, then *Hapka* mandates dismissal of plaintiff's claims of negligence and strict liability.[4]

Both parties cite *Minneapolis Society of Fine Arts* as the keystone for defining economic loss under Minnesota law. In that case, plaintiff sought damages for removal and replacement of exterior brick curtain walls which had deteriorated. The Court set forth the following rationale for concluding that plaintiff had incurred an economic loss:

> Generally, "economic loss" has been defined as resulting from the failure of the product to perform to the level expected by the buyer and commonly has been measured by the cost of repairing or replacing the product and the consequent loss of profits, or by the diminution in value of the product because it does not work for the general purposes for which it was manufactured and sold.... The damages sought in this case by [plaintiff] for removal and replacement of the brick and other consequential loss fall squarely within this "economic loss" definition. As such, they were recoverable in contract, if at all. [citations omitted].

*Minneapolis Society of Fine Arts,* 354 N.W.2d at 821.[5]

Plaintiff argues that a product's failure to "perform to the level expected by the buyer" is essential to economic loss. *Id.* Focusing on this component of the *Minneapolis Society* definition, plaintiff concludes that the economic loss doctrine does not encompass damages resulting from defects and risks of loss that were not within the reasonable expectation of parties to the commercial transaction at the time of the transaction. Because the asbestos-containing materials used in the Center performed to the expected level as fire-proofing material, plaintiff urges the Court to conclude

4. If, contrary to the conclusion of this Court, plaintiff's injury is determined to be economic loss, then the question will arise whether the new legislation on economic loss, 1991 Minn. Laws, ch. 352, will affect the applicability of *Hapka* to this case.

5. In *East River S.S. Corp. v. Transamerica Delaval,* 476 U.S. 858, 866, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986), the United States Supreme Court defined economic loss in a manner similar to the Minnesota Supreme Court in *Minneapolis Society of Fine Arts.* The issue in *East River* was whether, under maritime law, damage to a product itself resulting from a defect in the product constituted economic loss. The court concluded:

> [S]ince by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss ... is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law. [citation omitted].

*East River,* 476 U.S. at 870, 106 S.Ct. at 2302.

that the damage resulting from the fireproofing's release of toxic asbestos fibres is non-economic loss.

Defendant urges the Court to define economic loss as the expense of repairing or removing a defective construction product. To support this position, defendant focuses on the latter part of the *Minneapolis Society* definition:

> The damages sought in this case by [plaintiff] for removal and replacement of the brick and other consequential loss fall squarely within this "economic loss" definition. As such, they were recoverable in contract, if at all.

*Id.* Because the remedy sought in the instant case is primarily the cost of removal and replacement of the asbestos-containing fireproofing materials, defendant argues that only economic loss has occurred.

Plaintiff's definition, then, focuses on whether the damage resulted from the failure of the product to meet bargained-for expectations, while defendant's definition focuses on the type of remedy sought by the plaintiff. A remedy-based definition of economic loss based on factors such as product removal and replacement costs is not very precise. In a recent opinion, Judge Richard Posner of the Seventh Circuit noted that anything that destroys "values which can be monetized" causes a type of economic loss. *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir.1990).[6]

Moreover, a remedy-based definition diverts attention from the contract principles at the heart of the economic loss doctrine. In eliminating the damage to other property exception to the economic loss doctrine, the Minnesota Supreme Court set forth its belief that:

> [t]he foundational assumption of the Code as a whole is that by importing to their negotiations their experience of the marketplace, the reasonable contemplation of sophisticated parties is embodied in the transaction. It is at the time of the contract formation that experienced parties define the product, identify the risks, and negotiate a price of the goods

that reflects the relative benefits and risks to each.

*Hapka*, 458 N.W.2d at 688. On this basis, the court concluded:

> [h]aving negotiated the warranties and any limitations of liability, that a defective product causes damage to other property should not defeat the liability parameters the parties have set by opening the door to tort theories of recovery.

*Id.* Undergirding the economic loss doctrine, then, is the principle that sophisticated parties negotiate commercial contracts according to their reasonable understanding of the risks and liabilities that could exist should the product fail to perform to the level promised by the seller and expected by the buyer. When such a deal has been struck, the parties are limited to remedies under the Uniform Commercial Code for any economic losses resulting from breach of the negotiated agreement.

The Court finds that the rationale set forth in *Hapka* supports a definition of economic loss premised on a product's failure to perform as promised, as do the holdings of other courts subsequent to *Minneapolis Society* and *Hapka*. In *S.J. Groves and Sons Company v. Aerospatiale Helicopter Corporation*, 374 N.W.2d 431 (Minn.1985), the owner of a plane that crashed sought to recover the cost of its replacement. The Minnesota Supreme Court characterized plaintiff's injury as economic loss because he was seeking "recovery for the product's failure to live up to [plaintiff's] expectations as to its suitability, quality, and performance." Concluding that plaintiff "lost only what it had purchased," *id.* at 434, the court held that the U.C.C. provided an adequate remedy:

> [plaintiff] is a commercial entity possessing bargaining power substantially equal to that of the seller, clearly capable of negotiating a warranty against the damage the defective product caused to itself,....

*Id.* at 435. In *Holstad v. Southwestern Porcelein, Inc.*, 421 N.W.2d 371 (Minn.App.

---

**6.** The *Miller* court suggests that the term "commercial loss" would more aptly describe the

damage encompassed by the economic loss doctrine. *Id.*

1988), a Minnesota appellate court concluded that tort claims could be allowed "in limited situations where the nature of the defect or damage is other than that which could ordinarily be contemplated by the parties to a commercial transaction." *Id.* at 375; *see also Thofson v. Redex Industries, Inc.,* 433 N.W.2d 901, 903–904 (Minn. App.1988).

In other cases, Minnesota courts have specifically found that damage to property from asbestos-containing construction materials does not constitute economic loss even though the remedy may include product removal and replacement costs. A St. Louis County District Court set forth the following rationale when it denied a motion to dismiss negligence and strict liability claims based on damage to a school from asbestos fireproofing:

> The gist of the claim is not that the fireproofing failed to perform to the level expected, but rather that the hazardous asbestos products have contaminated Central and exposed persons to unreasonable risks of injury. The Court finds that the contamination constitutes physical injury to District's premises. The fact that damages may be measured by the cost of repairing or replacing does not transform the nature of the injury into economic loss.

*Independent School District No. 709 v. Air-O-Therm Application Company,* File No. 155716, 7 (St. Louis County District Court, May 30, 1987).

Relying on *Independent School District No. 709,* a judge from this district held that the injury resulting from asbestos contamination of the Federal Reserve Bank of Minneapolis "is not mere economic loss for which tort recovery is unavailable." *Federal Reserve Bank of Minneapolis v. Carey Canada, Inc.,* Civ. 3–86–185, 7–8 1988 WL 220489 (D.Minn. August 30, 1988). Magistrate Judge Patrick J. McNulty concluded that a strict liability claim for asbestos damage was a viable basis for punitive damages in *Miller–Dwan Medical Center v. National Gypsum Company, Inc.,* Civ. 5–89–71, 16 (D.Minn. November 17, 1989). He differentiated this claim from one for economic loss:

claims arising from failure of the product to meet expectations of suitability, quality and performance resulting in damages which a party to a sales contract could reasonably expect would flow from a defect in the product and which can be measured by cost of repair or replacement, consequent lost revenue, or diminution in value of the product itself, are benefit of bargain claims and can be brought in contract. Only the unusual claim for damages which can be seen as separate and apart from ordinary risk of a commercial transaction can sound in tort.

*Id.* at 15.

In a recent opinion, Judge Harry MacLaughlin of this district found "the totality of the Minnesota asbestos building cases to be persuasive authority that tort remedies should be available to the plaintiff ..." *Independent School District No. 197 v. W.R. Grace & Co., et al.,* 752 F.Supp. 286 (D.Minn.1990). He concluded:

> A review of the claims compels the view that this is not a case of economic loss. Plaintiff is not claiming that the asbestos failed in its primary function. The plaintiff claims the asbestos was purchased as a fire retardant and was applied to the steel support beams in the school. The claim arises not from a failure of the asbestos to perform this basic function, but from the fact that the asbestos had contaminated the entire building with allegedly dangerous asbestos fibers. This definitionally is not "economic loss."

*Id.* at 301–302.

Finally, in *Independent School District No. 622 v. Keene Corporation,* File No. C5–84–1701 (Minnesota Tenth Judicial District, September 7, 1990), a Minnesota District Court addressing this matter post-*Hapka,* found that losses due to the presence of asbestos in a building do not constitute economic loss. The Court held:

> Economic loss is defined as loss resulting from a product failing to perform to the level expected by the buyer. *Minneapolis Soc. of Fine Arts v. Parker-*

*Klein,* 354 N.W.2d 816, 820 (Minn.1984). There are no allegations that the fireproofing material failed to perform its function as fireproofing material. Plaintiff is alleging that the asbestos in the fireproofing material creates a danger to the health of those who use the school requiring Plaintiff to remove the material. This is not economic loss as defined in *Minneapolis Soc. of Fine Arts.* The decisions in *Superwood* and *Hapka* do not apply, and Plaintiff has, therefore, alleged proper negligence and strict liability claims.

*Id.* at 4.

■ The Court agrees with plaintiff that a proper definition of economic loss under Minnesota caselaw must focus on the failure of a product to perform as contracted rather than on the measure of damages. Given this definition, damage to other property could be found to be economic loss if it results from the failure of a product to perform as contracted. However, damage to other property could also be found to be non-economic loss. This is appropriate when the damage is something other than the risks that are negotiated and bargained for by sophisticated commercial entities. Parties to a commercial transaction can experience non-economic losses when damage to property results from a condition other than a product's failure to meet bargained-for expectations. Such is the case here. Plaintiff may therefore proceed with its tort claims.

## MEMORANDUM AND ORDER

On July 13, 1990, the above-captioned matter came before the Court for oral argument on the motions of defendants W.R. Grace & Co.—Conn. and National Gypsum Company for summary judgment in an action brought by T.H.S. Northstar Associates. Philip J. Goodman and Floyd E. Siefferman, Jr. represented the plaintiff. G. Marc Whitehead and Donald M. Lewis represented defendant W.R. Grace. Thomas V. Seifert represented defendant National Gypsum.

Based on the arguments of counsel, the record and the entire file, IT IS HEREBY ORDERED that:

1. The motion of defendant National Gypsum Company for summary judgment on the grounds of absence of product identification is granted; all claims of plaintiff against defendant National Gypsum Company are dismissed with prejudice and on the merits;

2. Defendants' motions to dismiss plaintiff's tort and warranty claims based on primary assumption of risk are DENIED;

3. Defendants' motions to dismiss plaintiff's tort claims for lack of an express assignment are DENIED;

4. Defendants' motions to dismiss plaintiff's claim for restitution (Count 1) are GRANTED;

5. Defendants' motions to dismiss plaintiff's tort claims based on the economic loss doctrine are DENIED;

6. Defendants' motions to dismiss plaintiff's claim of fraud and misrepresentation (Count 4) are DENIED;

7. Defendants' motions to dismiss plaintiff's claim of breach of express warranty (Count 6) are GRANTED;

8. With regard to Count 7, defendants' motions to dismiss plaintiff's claim of breach of implied warranty of merchantability are DENIED; defendants' motions to dismiss plaintiff's claim of breach of implied warranty of fitness for a particular purpose are GRANTED;

9. Defendants' motions to dismiss plaintiff's claim of nuisance (Count 8) are DENIED;

10. Defendants' motions to dismiss plaintiff's claim for punitive damages are GRANTED WITHOUT PREJUDICE and with leave to the plaintiff to file a motion before the Magistrate to amend its complaint to assert a claim for punitive damages arising from its cause of action in negligence;

11. Plaintiffs claims of conspiracy (Count 5), concert of action (Count 9), en-

terprise liability (Count 10) and alternative liability (Count 11) are dismissed.