**Lloyd BAKER, Plaintiff,**

v.

**MECKLENBURG COUNTY, and J. Harry Weatherly, Jr., individually, and in his official capacity as Director of Finance of Mecklenburg County, North Carolina, Defendants.**

No. 3:92–CV–439 P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 11, 1994.

Michael A. Sheely, Sheely & Young, Charlotte, NC, for plaintiff.

G. Michael Barnhill, Womble, Carlyle, Sandridge & Rice, James O. Cobb, Ruff, Bond, Cobb, Wade & McNair, Charlotte, NC, for defendant.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on Defendants' motion for summary judgment, filed February 2, 1994. Plaintiff filed his response on March 7, 1994. Defendants replied in a brief filed March 21, 1994.

The Court has carefully reviewed the motion for summary judgment, the respective briefs and exhibits, and the relevant legal authorities. Based upon this review, the Court makes the following conclusions.

Plaintiff's claims come in two varieties—those sounding in the First and Fourteenth Amendment of the United States Constitution, and those sounding in the North Carolina Constitution. Plaintiff complains his employer, Defendant Mecklenburg County, through its agent Defendant Weatherly, violated his First Amendment rights when Weatherly reassigned Plaintiff's duties from those of a supervisor to those of diminished supervisory stature, failed to support Plaintiff in his managerial duties, and gave Plaintiff inconsistent instructions in the course of his employment.

## FACTUAL SUMMARY

This action stems from a prior lawsuit. The prior action arose from Plaintiff's role as a "whistleblower." In August of 1982, Plaintiff, the Accounting Manager for Mecklenburg County, initiated discussions with the District Attorney about Mr. Nathan Alberty's (who then served as the Assistant Coun-

ty Manager for Finance and Administration) receipt of possible kickbacks in connection with county contracts to purchase computers. The following month, Alberty removed Plaintiff from his duties as accounting manager for stated reasons that were unrelated to his contact with the local prosecutor. In April of 1983, the District Attorney requested that, and Plaintiff did, meet with a State Bureau of Investigation agent to discuss Plaintiff's allegations. Eventually, the Board of County Commissioner's removed Alberty from his position as Finance Director. One of the defendants in the prior action, Gerald Fox, recommended the Commissioners choose Weatherly, instead of Plaintiff, to be the new Finance Director. The Commissioners chose Weatherly, while Plaintiff's name was never even submitted to them.

On May 2, 1986, Plaintiff filed a complaint alleging First Amendment prohibited retaliation for exercising his free speech rights in discussing Alberty's possible criminal conduct with the District Attorney. Specifically, Plaintiff alleged the retaliation involved Fox's submission of only Weatherly's name to the County Commissioner Board to fill the Finance Director's job, Weatherly's downgrading of Plaintiff's job performance ratings, Weatherly's failure to support him as a manager and reduction of his responsibilities, and the reclassification of his job. A jury eventually presided over that action and awarded Plaintiff $27,000. The Fourth Circuit reversed the verdict on all questions presented to the jury finding inadequate evidence to support its conclusion that the Defendants' conduct was motivated by retaliation for the Plaintiff's exercise of his First Amendment rights, 912 F.2d 463. On September 27, 1990, the Fourth Circuit denied Plaintiff's Petition for Rehearing. The Supreme Court denied *certiorari* on February 19, 1991, 498 U.S. 1088, 111 S.Ct. 967, 112 L.Ed.2d 1053.

Prior to January 30, 1992, Plaintiff's job duties involved, *inter alia*, supervising employee's in the General Accounting and Accounts Payable & Payroll division, recommending employees for hire and termination, and supervising the disbursement of all county funds. After that date, Defendant Weatherly assigned Plaintiff to duties which includ-

ed some, but not all, of his prior responsibilities. Indeed, Weatherly took a substantial portion of Plaintiff's prior duties away from him, essentially limiting him to paying the County's bills.

On September 2, 1992, Weatherly indicated he would eliminate Plaintiff's job. Weatherly has also failed to support Plaintiff in his managerial duties by changing Plaintiff's job performance rating of one of his subordinates, Ms. Rachel Ranson, to reflect a rating higher than that given to her by Plaintiff, and refusing to discipline Ranson despite Plaintiff's requests that he do so. These aspects of Plaintiff's employment relationship with Defendants' all amount to what Plaintiff believes is either an attempt to force him to quit or to eliminate his job.

Plaintiff filed the present complaint on October 29, 1992 and it was removed to this Court on November 30, 1992. This complaint, brought under 42 U.S.C. § 1983, alleges Weatherly's conduct was intended to retaliate against Plaintiff because he filed the prior lawsuit and therefore violates his First Amendment right to free speech and the North Carolina Constitution.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides,

> ... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (West 1993).

Summary judgment must be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id., Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). To attain summary judgment, the movant bears an initial burden of demonstrating no genuine issues of material fact are present. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party who must point out specific facts which create disputed factual issues. *Anderson v. Lib-*

*erty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In evaluating a summary judgment motion, district courts must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds could recognize as real factual disputes." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence from the entire record could not lead a rational fact finder to rule for the non-moving party. *Matsushita Electric Industrial Co.,* 475 U.S. at 587, 106 S.Ct. at 1356, *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2551–52 (1986).

### *ANALYSIS*

The decisive issue in this case is whether Plaintiff's filing of a lawsuit in 1986 is pro-

tected by the First and Fourteenth Amendments? If the filing and prosecution of that suit is not protected by the First Amendment, then Defendants' retaliation (assuming that is what it is) against Plaintiff for filing that action does not offend the First Amendment.

"[A] State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), *citing, Keyishian v. Board of Regents,* 385 U.S. 589, 605–606, 87 S.Ct. 675, 684–85, 17 L.Ed.2d 629 (1967). This is so primarily because "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Id.* 461 U.S. at 145, 103 S.Ct. at 1689, *citing, NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913, 102 S.Ct. 3409, 3426, 73 L.Ed.2d 1215 (1982).[1] Yet, to acknowledge the lofty stature of the right to free expression is not to demonstrate either that all public employment matters come under the First Amendment or that a highly valued personal interest is also a First Amendment right. Particularly, one's sense of indignity at mistreatment on the job does not transform the rights trammelled by the mistreatment into First Amendment rights of free speech or petition for redress of grievances. "[G]overnment offices could not function if every employment decision became a constitutional matter." *Connick,* 461 U.S. at 143, 103 S.Ct. at 1688.

Consequently, the Supreme Court and the Fourth Circuit have said a whistleblower's

---

**1.** The Court acknowledges that the First Amendment rights to freedom of speech and petition for redress of grievances are distinguishable and that Plaintiff's claims may well sound in both provisions embraced by that amendment. However, for analytical purposes in the vast majority of cases, there is no meaningful distinction between these rights since, "[t]he right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith,* 472 U.S. 479, 482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985). "The Petition Clause, ... was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble." These First Amendment

rights are inseparable and there is no sound basis for granting greater constitutional protection to statements made in a petition to the [Government] than other First Amendment expressions. *Id.* at 485, 105 S.Ct. at 2791 (citations omitted).

Consequently, "because [Plaintiff] does not argue that [Defendants' conduct has] burdened each right differently ...," indeed because he has scarcely raised the right to petition at all, the Court will "view these claims as essentially the same [because] the right to petition and the right to free speech are ... related and generally subject to the same constitutional analysis." *Wayte v. United States,* 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 1532 n. 11, 84 L.Ed.2d 547 (1985).

conduct is sheltered by the First and Fourteenth Amendments from public employer retaliation only in certain limited circumstances. Obviously, there must be some sort of expression implicated because when coupled together, the First and Fourteenth Amendments proscribe government from, "abridging the freedom of speech...." U.S. Const. amend. I. Even so, it is not just any form of expression that is protected by the First Amendment in the context of public employment. Instead, it is only when the public employee's expression can be fairly considered as "relating to any matter of political, social, or other concern to the community ... [before] intrusive oversight by the judiciary in the name of the First Amendment" is triggered. *Id.*

Consequently, "under § 1983 [a plaintiff] must show first that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern." *Huang v. Board of Governors of U.N.C.,* 902 F.2d 1134, 1140 (4th Cir.1990) (emphasis in original), *citing, Connick,* 461 U.S. at 146, 103 S.Ct. at 1689. This element involves proof of both an expression and that it relates to something of public concern. Not all public employee expressions are protected under § 1983 by the First Amendment since, "it is settled that a public employee's expression of grievances concerning his own employment is not a matter of public concern." *Huang,* 902 F.2d at 1140. Indeed, it has been observed that "[p]rivate citizens cannot be punished for speech of merely private concern, but government employees can be fired for that reason." *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 95, 110 S.Ct. 2729, 2748, 111 L.Ed.2d 52 (1990) (Justice Scalia dissenting). Thus, it is not the case that all public employees' expressions—and their litigation if this is indeed a variant of protected expression—are constitutionally protected.

Litigious expressions are among those expressions that are not automatically ascribed First Amendment shelter simply because they are filed. The assumption that all lawsuits are protected speech is a big one indeed. Just as to speak is not to sue, the Court believes that to sue is not to necessarily come under the rubric of the First Amendment's assorted rights to free expression. The notion that speaking is litigating is as much a *non sequitur* as the proposition that litigating is always speaking within the meaning of the First Amendment either as it was written, originally understood, or has since been interpreted. "Everyone exaggerates the importance of his or her own activity and it is therefore natural for lawyers to suppose that [behind] every legal pleading, however humble, comes trailing clouds of First Amendment glory." *Yatvin v. Madison Metropolitan School District,* 840 F.2d 412, 420 (7th Cir.1988). If public employee litigation is protected by the First Amendment at all, it must be because the lawsuit is of a character that involves the "public employee speak[ing] ... as a citizen upon matters of public concern...." *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690. Therefore, this Court must decide whether Plaintiff, as a public employee filing a lawsuit, was speaking as a citizen when he did so. Then the Court must also consider whether his lawsuit involved matters of public concern. Determining whether a lawsuit is of such a character that it implicates the public concern requires evaluating it by its, "content, form, and context ... as revealed by the whole record." *Id.* This is an inquiry which must be determined as a matter of law, not fact. *Id.* at n. 7.

Thus, this Court must, "examine for [itself] the statement[ ] in issue and the circumstances under which [it is] made to see whether or not [it] ... [is] of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect." *Id.* at n. 10 *quoting, Pennekamp v. Florida,* 328 U.S. 331, 335, 66 S.Ct. 1029, 1031, 90 L.Ed. 1295 (1946).

"Second, [plaintiff's] must show that the alleged retaliatory action deprived him of some valuable benefit." *Huang,* 902 F.2d at 1140 (emphasis in original), *citing, Perry v. Sinderman,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Finally, the plaintiff "must show a causal relationship between the expression of public concern and the retaliatory action." *Id.*

### 1) Speaking as a Citizen

■ Plaintiff argues his prior lawsuit involved a matter of public concern and therefore it *must* be protected speech. But, this is only half of the equation. Lawsuits must both touch upon matters of public concern and be brought by one "speaking" as a citizen, not solely as an employee, before they are elevated to a stature of First Amendment protected litigious expressions. *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690.[2]

Plaintiff's prior lawsuit must first have been brought by him as an ordinary citizen rather than as an employee before any constitutional significance may be attached to it as a form of constitutionally protected expression. A lawsuit is brought by a plaintiff as a citizen when it seeks to "promote a cause" larger than the action itself. *Yatvin*, 840 F.2d at 419. A plaintiff's lawsuit is brought individually as an employee when it primarily is brought to "advance her [or his] career." *Id.* If the lawsuit's purpose is primarily premised upon protecting the plaintiff's job, it may well involve matters of tremendous public concern, but it is not therefore brought by one acting as a common citizen largely on behalf of his fellow citizens to protect their rights. Litigation instituted by an employee *qua* employee is of a type which has been considered a "run-of-the-mine single-plaintiff discrimination case" and does not "seek relief against pervasive or systemic misconduct by a public agency or public officials and is not part of an overall effort by the plaintiff or by persons or groups allied with her to correct allegedly

unlawful practices or bring them to public attention." *Id.* at 420.

Plaintiff's 1986 suit was brought after the subject of his discussions with the District Attorney—Mr. Alberty—had been removed from his position of public trust. His lawsuit could not have been premised upon exposing Mr. Alberty's wrongdoing. Instead, it was focused upon preventing Plaintiff from suffering a backlash in his employment from reporting Mr. Alberty. Thus, the fly in the public's ointment had been removed before Plaintiff's 1986 retaliation lawsuit was filed. As such, that lawsuit never concerned matters which all citizens shared in common because Mr. Alberty, as a steward of the public trust, had already been removed. Plaintiff's lawsuit was primarily concerned with his unique (and understandable) interest in preventing his public employer from firing him for going to the authorities and ultimately, keeping his job. While the action may have involved Plaintiff's exercise of First Amendment liberties, it was not itself primarily about vindicating those liberties for Americans in general and was not about Mr. Alberty's abuse of his public office.

The fact that Plaintiff believed then, and believes now, that he was being treated shabbily for practicing his constitutional rights does not elevate his 1986 lawsuit into the realm of First Amendment protected forms of expression. The Court finds this is precisely such a case where a plaintiff is not primarily acting as a normal citizen vindicating the public's interest in good government.

---

2. The idea that any lawsuit implicating matters of public concern is protected speech is the rough equivalent of positing that all civil rights litigation is protected speech since surely civil rights ligation is of public concern. But this view is not supported by the great weight of authority. Indeed, this seems to roughly track the Eight Circuit's position which holds that the mere "filing of . . . a civil rights lawsuit [is an] activity protected by the First Amendment." *Greenwood v. Ross,* 778 F.2d 448, 457 (8th Cir. 1985). The inability of this view to persuade other Circuits is perhaps explained by the lack of reasoning to support it since in *Greenwood* "the question [of] whether filing a civil rights lawsuit is protected by the First Amendment was not even discussed." *Yatvin,* 840 F.2d at 419–420. According to this position, a lawsuit need only involve a matter of public concern to be simulta-

neously accorded the lofty statute of a First Amendment protected right. But the mere fact that a matter, and particularly a matter of *private* litigation, involves to some degree matters of concern to the public does not indicate why it is also a First Amendment protected act of expression. *Connick* requires that the speaker or plaintiff must also be one speaking in his capacity as an ordinary citizen which is plainly distinguishable from one's function as an employee. The *Greenwood* line of analysis seems to be born of the school which holds that whatever is worth protecting must also be provided for in the Constitution. But of course, this would only be true if the Constitution was an not a written document which binds even the courts, but instead an occasion for judges to muse on how they would make the laws and order the affairs of men if they were given free reign.

This is not to say the present Plaintiff's suit is somehow improper. It is only to say that Plaintiff's 1986 lawsuit was not an act of constitutionally protected expression. The mere fact that a lawsuit either touches upon, or even entirely embraces matters of public concern does not therefore transform it into an expressive act protected by the First Amendment. There must also be a plaintiff who brings an action as a citizen championing rights held in common by the bulk the general citizenry. That element is missing in this case.

The Framers of the Bill of Rights presumably understood the relatively simple distinction between speech and litigation. This, in part, explains why they drafted an amendment that protects Americans from laws which "abridg[e] the freedom of speech" and not one that ensures or encourages their unfettered freedom to sue one another. U.S. Const. amend. I. As the Supreme Court in *Connick* observed, "the First Amendment's primary aim is the full protection of speech upon issues of public concern...." *Connick,* 461 U.S. at 154, 103 S.Ct. at 1694. Litigation is expression only when it "more closely resembles public debate [than a] private employment grievance[ ]." *Avringer v. Mayor and City Council of Baltimore,* 862 F.2d 75, 78 (4th Cir.1988).

Only a plaintiff acting in his capacity as a citizen can carry on a debate on a topic in common with all citizens and protected by the First Amendment. The Court believes Plaintiff's 1986 lawsuit was not a protected act of expression since it was essentially brought by him as an employee seeking to protect his rights as an employee, not as a citizen vindicating the interest of his fellow citizens. Therefore, any retaliation for that lawsuit was not retaliation prohibited by the First Amendment's protection of free expression.

### 2) A Matter of Public Concern

■ Even if Plaintiff's suit was brought by him as a citizen on behalf of the general public to carry on a public debate of some sort, the lawsuit itself did not involve matters of public concern.[3] In determining whether a lawsuit implicates the public concern, this Court must consider "the content, form, and context" of the action itself. *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690. Consequently, the Court will now turn to consider whether the content, form, and context of Plaintiff's 1986 action was such that it amounted to a matter of public concern.

#### a) Content

Plaintiff's 1986 lawsuit was brought not to challenge the alleged wrongdoing of Mr. Alberty, since that problem had been fully rectified, but to save himself from loosing his job after he discussed Alberty's possible criminality with the District Attorney. So, Plaintiff's argument that his lawsuit was about the alleged wrongdoing of a public official is factually unsupportable.

Plaintiff's next argument holds that his lawsuit was about retaliation for whistleblowing and that this sort of lawsuit is a matter of

---

**3.** Plaintiff argues that Judge McMillan's ruling in the 1986 action collaterally estops Defendants' from their argument that the 1986 action did not involve the public concern and that the Fourth Circuit's reversal of the jury's verdict does not alter the district court ruling. The Court has reviewed the transcript of Plaintiff's 1986 trial in which Judge McMillan made the ruling upon which Plaintiff relies. It is clear to the Court that Judge McMillan ruled Plaintiff's discussions with the District Attorney about Alberty's misuse of County funds was a matter of public concern and therefore protected by the First Amendment. However, that court did not rule that his filing a lawsuit in 1986 was protected expression under the First Amendment. The two propositions are not identical because the subject of an action is distinguishable from the filing of the action itself. Plaintiff is advancing the proposition that the filing of his 1986 action is the occasion for Defendant's retaliation and that the retaliation is unlawful because the filing of the 1986 action was a First Amendment protected form of expression. Judge McMillan ruled the discussion with the prosecutor was protected expression, not Plaintiff's 1986 lawsuit. "Collateral estoppel ... is premised on the notion that a judgment in a prior suit precludes re-litigation of issues actually litigated...." *Fullerton Aircraft Sales v. Beech Aircraft Corp.,* 842 F.2d 717, 720 (4th Cir.1988) (citations omitted). Therefore, there is neither an identity of issues between that issue which Judge McMillan resolved and the one before this Court, nor was the issue presently before the Court actually decided by Judge McMillan. Therefore, Defendants are not collaterally estopped from arguing that Plaintiff's 1986 lawsuit was not a matter of public concern.

public concern. The public may well be concerned about retaliation against a "whistle-blower" and in preventing public employees from being fired from public employment for blowing their whistles, but no more or less so than it does in a lawsuit involving an employer who has fired a fellow citizen because of the employee's skin color, gender, age, handicap or religion. It is hard to see how a whistleblower suit concerns the public any differently from the myriad of employment discrimination suits brought in the federal courts without the slightest hint that they are exercises in First Amendment expression. Yet, while race, gender, age, and religious discrimination actions are of concern to the public, it does not follow that lawsuits involving either whistleblowing or illicit discrimination implicate the public concern in a fashion that makes a constitutional difference. These lawsuits do not become enshrined in the First Amendment simply because the wrongs they attempt to right are important to Americans. A lawsuit must involve more than a publicly despised wrong to an individual before it ascends to the realm of First Amendment expression.

A lawsuit, before it is cloaked with First Amendment garb, must transcend an attempt to right an individual wrong and itself undertake a publicly focused debate over the challenged conduct. "[E]very act of retaliation against an employee who files a lawsuit is [not] a violation of the First Amendment, because every legal pleading is [not] ... a contribution to the marketplace of ideas." *Yatvin,* 840 F.2d at 420.

There must be something more to the content of a lawsuit before it may be brought into the First Amendment's protection. The litigation, for example, "must seek[ ] to advance political or other ideas ..." or involve "communications designed to acquaint individuals with their legal rights...." *Yatvin,* 840 F.2d at 419. Plaintiff's 1986 action seems not to have involved the promulgation or vindication of any identifiable idea and only tangentially involved acquainting others with their legal rights. Nothing about that lawsuit indicates it was either premised upon or conducted to achieve public debate. It was but a lawsuit brought to right a per-

ceived wrong against an individual plaintiff, not the public, and not even public employees in general. There is nothing intrinsically unseemly about a this sort of action, but neither is there something about such a suit that elevates it to First Amendment status. The Court is satisfied that Plaintiff's 1986 lawsuit was neither intended to be, nor actually achieved, a public debate on the propriety of firing whistleblowers. Consequently, it was not a lawsuit, the content of which, implicated the public concern within the meaning of the First Amendment.

#### b) Form

Plaintiff's action was but a private lawsuit against several defendants involving Plaintiff's constitutional rights. As such, Plaintiff's 1986 did not seek to achieve some objective that would accrue benefits to the public in general. The suit was structured like any other personal dispute which private litigation is intended to resolve. Whatever the outcome of that suit, Plaintiff would have been the primary beneficiary, and the remainder of Americans would have benefitted only in the most attenuated of ways much like the way they benefit from the assorted employment discrimination actions brought across the land.

Obviously, Americans in general do not have a First Amendment right to whistleblowers sounding their alarms, even if the whistleblowers have a First Amendment right to sound them. So, even granting that Plaintiff had a First Amendment cause of action to bring does not demonstrate that by bringing that action, he was doing so in a form that would champion the First Amendment rights held in common by all people. In fact, Plaintiff's lawsuit took the form of vindicating those First Amendment rights unique to him as a public employee. Consequently, the suit was not in a form that would vindicate the First Amendment rights of anyone other than whistleblowers in general; and specifically one whistleblower, the Plaintiff.

#### c) Context

Plaintiff's lawsuit was conducted like most other lawsuits. It involved an adversarial

proceeding in which a plaintiff is charging someone with having perpetrated a legal wrong against him. Like all other lawsuits, it was a matter of public record. Still, it was no more brought as a lawsuit intended to draw public attention to the alleged wrongs in question than the many other suits brought in federal courts. The First Amendment does not transform a lawsuit into speech merely because its proceedings are available to the public.

Moreover, to acknowledge that the subject of Plaintiff's 1986 lawsuit involved speech which touched upon a matter of public concern does not lead the Court to conclude that lawsuit was also a matter of public concern within the meaning of the First Amendment. Filing an action involving First Amendment rights is not to engage in First Amendment protected expression. To so conclude would be to confuse the carriage with the passenger. In short, none of the circumstances surrounding Plaintiff's 1986 lawsuit indicate that it was either intended to draw public attention or that it actually did draw public attention in a way that would make it a matter, unique from most other lawsuits, of public concern.

### CONCLUSION

Since the Court has concluded that Plaintiff brought his 1986 lawsuit as an employee and not as a citizen, and that it did not involve public debate over any topic atypically implicating the public concern, it follows that his lawsuit was not an expression protected by the First Amendment. Since that is so, Plaintiff's First Amendment retaliation claim collapses because no First Amendment right is being infringed by his employer's alleged retaliation. Therefore, Defendants' motion for summary judgment must be granted as to the First and Fourteenth Amendment claims.

The Court believes the remaining claims under the North Carolina Constitution should also be dismissed under 28 U.S.C. § 1367 for jurisdictional reasons. According to that statute, "district courts may decline to exercise supplemental jurisdiction over a claim if ... the district court has dismissed all claims over which it has original jurisdic-

tion...." 28 U.S.C. § 1367. Plaintiff's action obtains original jurisdiction in this Court only by virtue of his having stated a claim for relief under the Constitution and the laws of the United States. Since the Court has granted summary judgment as to those federal claims, it no longer has original jurisdiction over the pendant state law claims. Accordingly, the Court will in its discretion dismiss the remaining claims arising under the North Carolina Constitution because that actions arising under that document are better left to North Carolina's courts.

**NOW, THEREFORE, IT IS ORDERED** that Defendants' motion for summary judgment be, and hereby is, **GRANTED.**