**FULLERTON AIRCRAFT SALES AND RENTALS, INC., Plaintiff-Appellant,**

v.

**BEECH AIRCRAFT CORPORATION; Beech Acceptance Corporation, Defendants-Appellees.**

No. 87-3821.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1987.

Decided March 18, 1988.

Thomas Phillip Mains, Jr., Alexandria, Va., for plaintiff-appellant.

Ralph Peyton Mahaffey (Miles & Stockbridge, Fairfax, Va., on brief), for defendants-appellees.

Before RUSSELL, PHILLIPS and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this diversity action, Fullerton Aircraft Sales and Rentals, Inc. (Fullerton) sued Beech Aircraft Corporation (Beech) and a finance company, Beech Acceptance Corporation (BACI), to recover damages for breach of express and implied warranties respecting an aircraft manufactured by Beech that was purchased by Fullerton from a Beechcraft dealer under a conditional sales contract financed by BACI. The district court granted summary judgment to Beech and BACI on the alternative grounds of collateral estoppel growing out of an earlier action by Fullerton against the dealer and lack of contractual privity between Beech and Fullerton. Not addressed by the district court was a further defense of the bar of the compulsory counterclaim rule growing out of a pending action in a United States District Court in Kansas.

Because we conclude that the district court erred both in its collateral estoppel and lack of privity rulings, we reverse and remand for further proceedings.

I

In 1984, Fullerton purchased a Beechcraft passenger airplane manufactured by Beech. Fullerton purchased the plane from Page Avjet Corp. (Page), an authorized Beechcraft dealer. The sale was financed by BACI. Because delivery of the plane was to take place in Kansas, the parties contractually agreed that the Kansas version of the Uniform Commercial Code would govern the transaction.

On February 12, 1986, Fullerton filed an action in the United States District Court for the Eastern District of Virginia against Beech and Page seeking to revoke its acceptance of the aircraft pursuant to K.S.A. 84-2-608(1) on the theory that alleged abnormal vibrations rendered the aircraft "nonconforming" to the contract and "substantially impaired" its value to Fullerton.[1] *See Fullerton Aircraft Sales and Rentals, Inc. v. Page Avjet Corp. and Beech Aircraft Corp.,* No. 86-0171-A (E.D.Va. Sept. 15, 1986) (hereinafter the "first Virginia action"). Beech was voluntarily dismissed from that action since the revocation of acceptance remedy properly lay only against the immediate seller, Page.

On September 15, 1986, following a bench trial, the district court ruled that Fullerton had failed to show either "nonconformity" or "substantial impairment" and accordingly entered judgment against Fullerton. On appeal, this court declined to affirm the district court's finding of conformity but affirmed on the grounds of failure to show substantial impairment. *See Fullerton Aircraft Sales and Rentals, Inc. v. Page Avjet Corp. and Beech Aircraft Corp.,* No. 86-2625, slip op. at 3-6 (4th Cir. April 27, 1987) (unpublished per curiam) [818 F.2d 28 (Table) ] ). In so holding, we noted that the trial judge had apparently accepted Fullerton's claim of abnormal vibrations but had found that the airplane was made "safe" after June 1985 through the combined repair efforts of Beech and Page. We held that there was sufficient evidence to support this finding and the district court's correlative ruling

---

1. Section 2-608(1) of the Uniform Commercial Code, as adopted by Kansas in Kan.Stat.Ann. § 84-2-608(1), provides:

The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

that the value of the aircraft to Fullerton was not "substantially impaired." *Id.* at 6.

On July 10, 1986, two months before the district court's judgment in the first Virginia action, BACI commenced an action in the United States District Court for the District of Kansas for collection on the Promissory Note and Security Agreement by which it financed the original sale of the aircraft by Page to Fullerton. Fullerton and its President, John Long, named as defendants in the Kansas action, answered by contesting that court's venue and personal jurisdiction. The answer further prayed that BACI's action be stayed pending the resolution of the first Virginia action.

On October 31, 1986, after entry of the district court's judgment in the first Virginia action, Fullerton commenced the present action against Beech and BACI by filing a complaint alleging breach of express and implied warranties.[2] Fullerton asserted as grounds for BACI's liability that BACI, as Beech's wholly-owned subsidiary, was liable for all of Fullerton's claims against Beech. In their answers to Fullerton's complaint in the present action, Beech and BACI raised the defenses of collateral estoppel based on the first Virginia action, and failure to state a claim for breach of warranty upon which relief could be granted. Beech and BACI further asserted that Fullerton's complaint was barred for failure to assert it as a compulsory counterclaim in the Kansas action.

On January 5, 1987, Fullerton filed a motion in the Kansas district court to have the Kansas action transferred for consolidation with the present Virginia action. The asserted grounds for the motion, in pertinent part, were witness convenience and that the defenses Fullerton would raise to BACI's complaint were based on the same facts underlying Fullerton's complaint in the present action. On February 10, 1987, Fullerton's motion for transfer was denied by the Kansas district court after oral argument.

On February 24, 1987, Beech and BACI jointly moved to dismiss the present action for failure of the complaint to state a claim upon which relief could be granted and for the Virginia district court's lack of personal jurisdiction. Shortly thereafter Beech and BACI filed a joint motion for summary judgment. As grounds for summary judgment, Beech and BACI asserted that Fullerton was collaterally estopped from relitigating the issue of breach of warranty which had been determined adversely to Fullerton in its earlier action against Page seeking revocation of the aircraft sale. Next, Beech and BACI asserted that Fullerton's complaint failed to state a claim for breach of express or implied warranty under Kansas law due to lack of contractual privity between Fullerton and Beech. Finally, Beech and BACI asserted that the present action should be dismissed as the proper subject of a compulsory counterclaim in the Kansas action under Fed.R. Civ.P. 13(a). In conjunction with this motion, Beech and BACI filed affidavits asserting their separate corporate identities.

Following hearings on Beech's and BACI's motions to dismiss and for summary judgment, the district court granted the appellees' motion for summary judgment on the grounds of collateral estoppel and want of privity of contract between Beech and Fullerton. The district court did not rule on the compulsory counterclaim defense. Judgment was accordingly entered for Beech and BACI and Fullerton timely noted this appeal.

## II

On appeal, Fullerton argues that the district court erred as a matter of law in granting summary judgment on the grounds of collateral estoppel and want of contractual privity. Beech and BACI argue in support of these grounds, and, in the alternative contend that the judgment can also be supported on the compulsory counterclaim grounds raised but not addressed below. We consider these contentions in the order stated.

---

2. The action, originally filed in state court in Virginia was removed to the United States District Court for the Eastern District of Virginia upon motion by Beech and BACI.

## A

"Collateral estoppel or issue preclusion is premised on the notion that a judgment in a prior suit 'precludes relitigation of issues actually litigated and necessary to the outcome of the first action.'" *United States v. Wight*, 819 F.2d 485, 487 (4th Cir.1987) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979)). Once a court decides an issue of law or fact necessary to its judgment, that decision can be binding upon a party to it if the party was given a "'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980) (citations omitted).

The district court found that Fullerton's breach of warranty claim in this action was based on the same alleged defect in the aircraft that was central to Fullerton's claim for revocation against the dealer (Page) in the first action, that defect being an "abnormal vibration." The district court concluded that despite the different remedies presently sought against Beech, "the basic issue is the same: was there a vibration in the plane serious enough to render it defective." J.A. 300. Because that issue necessarily had been determined adversely to Fullerton in the earlier action, Fullerton was collaterally estopped to relitigate it, and because it was a critical element in Fullerton's present claim, that claim failed as a matter of law.

Fullerton here asserts that the district court erred in its collateral estoppel analysis because the issue of defect in this breach of warranty action against Beech is not the same issue as that respecting the abnormal vibration that was decided adversely to Fullerton in the earlier action.[3] We agree with Fullerton.

The district court failed properly to identify the exact issue litigated in the first Virginia action. The litigated issues respecting the aircraft's condition in that ac-

tion for revocation of acceptance under K.S.A. 84–2–608(1) were twofold. First, whether the aircraft was nonconforming to the contract. As to this, the earlier action determined only that despite the abnormal vibration the aircraft was conforming. In support of this finding the district court reasoned that Page's effective disclaimer of all warranties rendered the aircraft necessarily "conforming" to the contract. The second issue was whether the abnormal vibration substantially impaired the aircraft's value to Fullerton. As to this, the court only found that Beech and Page's combined repair efforts had rendered the aircraft "safe" after June 1985 and therefore concluded that the value of the aircraft to Fullerton was not "substantially impaired" as required by K.S.A. 84–2–608(1) to allow revocation. *See Fullerton Aircraft Sales and Rentals, Inc. v. Page Avjet Corp. and Beech Aircraft Corp.*, No. 86–2625, slip op. at 3–6 (4th Cir. Apr. 27, 1987) (unpublished per curiam).

On appeal, this court rejected the finding of conformity but affirmed the district court on the basis of its alternative finding that the asserted abnormality did not in any event substantially impair the value of the plane to Fullerton. *Id.* The effect of our decision on appeal in the first Virginia action was precisely to limit the holding in that case to a finding of no substantial impairment irrespective of conformity. This holding can have no preclusive effect in the present action on the distinctly different issue of whether the aircraft had such a defect as to breach express and implied warranties between the manufacturer and buyer. Because that specific issue of "defect" was not litigated in the first Virginia action, the district court's grant of summary judgment cannot be upheld on collateral estoppel grounds.

## B

Neither can summary judgment be upheld on the district court's alternative

---

**3.** Appellant also argues that new evidence that came to light after the first action indicates that Fullerton did not have a full and fair opportunity to litigate the issue of defect even if this court were to find that it was in fact litigated in the first Virginia action. Given our disposition of Fullerton's principal assertion, it is not necessary for us to reach this issue.

ground of a lack of contractual privity between Fullerton and Beech. To show why requires analysis of both Fullerton's express and implied warranty claims.

The express warranty claims were based upon certain "Manufacturer's Limited Warranties" contained in the sales contract between Fullerton and Page, and upon a letter directly from Beech to Fullerton dated August 8, 1985. The letter stated that Beech was providing Fullerton a one year warranty to end October 15, 1985, and made certain other promises regarding repair and reimbursement to Fullerton in connection with the problems Fullerton was experiencing with the aircraft.

■ The express warranties from Beech that were included in the Page–Fullerton contract were claimed by Fullerton to have been included there as an inducement by Beech to Fullerton to buy the aircraft. Fullerton claimed that the entire purchasing arrangement came about as a part of a settlement agreement in a previous action between Beech and Fullerton over another Beech plane with which Fullerton experienced problems. Beech's response to these assertions was that it gave the express "Manufacturers Limited Warranty" only to Page as part of the contract by which Beech sold the plane to Page. Whether one or the other version was correct obviously was a material issue genuinely in dispute on the summary judgment record.

In granting summary judgment for Beech and BACI, the district court did not address the issue of whether any express warranties by either of these means had been breached. Rather, the district court held that contractual privity was required to support an action for breach of warranty under Kansas law and that privity was indisputably lacking here. In so holding, the district court relied on K.S.A. 84–2–318 and two relevant cases applying Kansas law, *Owens–Corning Fiberglas v. Sonic Dev. Corp.*, 546 F.Supp. 533 (D.Kan.1982), and *Professional Lens Plan v. Polaris Leasing*, 675 P.2d 887 (Kan.1984).

The Kansas version of the Uniform Commercial Code § 2–318 provides:

> 84–2–318 Third party beneficiaries of warranties express or implied. A seller's warranty, whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Kan.Stat.Ann. § 84–2–318 (1983).

Fullerton correctly points out that this provision serves only to extend sellers' warranties to natural persons personally injured by the seller's breach of warranty. It merely expands the category of those who can bring an action for breach of warranty. It says nothing about the right of a buyer in privity with a seller to reach a manufacturer for breach of the latter's warranty, nor does it speak at all to claims based on express warranty. *See Professional Lens*, 675 P.2d at 895.

Neither do the two Kansas cases relied on by the district court support its holding that Kansas law requires contractual privity as an absolute prerequisite to an action for breach of express or implied warranties. Looking first to Fullerton's implied warranty claims, we note that implied warranties are imposed by operation of law in Kansas on public policy grounds and without regard to whether the parties to the implied warranty are in "privity" or whether the loss suffered is purely economic when the product is such that it would be inherently dangerous if defectively manufactured. *See Professional Lens Plan v. Polaris Leasing*, 675 P.2d 887, 898–99 (Kan.1984).

To date no court has addressed the question of whether an airplane is "inherently dangerous" as contemplated by this Kansas principle of implied warranty law. There are, however, holdings to the effect that an automobile tire is "inherently dangerous," *see B.F. Goodrich Co. v. Hammond*, 269 F.2d 501 (10th Cir.1959) (applying Kansas law), but that a computer and its hard disc component part, *see Professional Lens*, 675 P.2d at 898, and a soda bottle recapping device, *see Evangelist v.*

*Bellern Research Corp.*, 433 P.2d 380 (Kan.1967), are not.

■ We therefore think that the policy concerns emphasized in *Professional Lens*, 675 P.2d at 894–99, control here in respect of Fullerton's implied warranty claim. An aircraft is certainly far more dangerous than is an automobile tire if defectively manufactured. Further, the underlying policy concerns that militate against holding a manufacturer to implied warranties to a remote buyer, *see id.*, simply do not exist here. As is indisputably shown on the summary judgment record, Beech had extensive personal contacts with Fullerton in connection with the sale both before and after it was consummated through Beech's dealer, Page.

Accordingly, we hold as a matter of Kansas law that lack of contractual privity does not bar Fullerton's implied warranty claim against Beech.

■ Turning to Fullerton's express warranty claims, we need only note that both *Owens–Corning* and *Professional Lens* directly support Fullerton's contention that the mere lack of contractual privity between it and Beech does not bar those claims. Although express warranties were not involved in *Professional Lens*, the Kansas court there noted that:

> [T]he law permits a non-privity buyer to recover for direct economic loss if the remote seller has breached an express warranty. Where the buyer cannot show reliance on express representations by the remote seller, however, the case law is in conflict.

675 P.2d at 895 (quoting White and Summers, *Uniform Commercial Code* § 11–5, p. 407 (2d ed. 1980)). Similarly, in *Owens–Corning*, where it was held that because the buyer received no express warranties from the remote manufacturer there was no cause of action for express warranty, the clear implication is that privity is irrelevant. No mention of privity was made, the *Owens–Corning* court simply stating that "[i]n Kansas, it is necessary to prove both that an express warranty was made, and that it was relied upon by the buyer." 546 F.Supp. at 541. Fullerton clearly presented enough evidence at the summary judgment proceedings to raise the issue of reliance on Beech's express representations and warranties.

Accordingly, we hold that contractual privity is not a prerequisite to an action for breach of express warranties under Kansas law. To hold otherwise would be to permit a manufacturer to avoid express warranty representations made to a buyer simply by insuring that the actual contract of sale was with a dealer or other third party.

### III

As indicated, both Beech and BACI defended alternatively on the basis that Fullerton's action was barred under Fed.R.Civ. P. 13(a) as a compulsory counterclaim in the Kansas action, in which BACI (but not Beech) had sued Fullerton to recover the balance due on the promissory note and financing arrangement incident to the aircraft's purchase. As also indicated, having dismissed Fullerton's claim on other grounds, the district court did not address the counterclaim defense, but Beech and BACI now urge that we should affirm the district court's dismissal on that alternative basis. We decline to consider the matter, for several reasons, none of which precludes consideration of the defense on the remand we order.

■ In the first place, the record does not indicate the status of the Kansas action. Even if the claim fell within its compass, Rule 13(a) could not be invoked to bar this action until the Kansas action had proceeded to final judgment. *See generally* 6 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 1418. Before that happens, the pendency of that action may be considered in this one in determining the proper way to dispose of the arguably related actions within the federal system, but that is all. *See id.* So, the first thing to be done in considering this defense is to determine the Kansas action's status.

If the Kansas action has proceeded to judgment, there are other questions about the compulsory counterclaim rule's application that must be addressed and that we

cannot address with sufficient assurance on the present record. The most critical is whether Beech has standing to invoke the compulsory counterclaim rule in any event. Beech is not a party to the Kansas action and it is a fundamental requirement of the rule that the party seeking to invoke it must in the other action be an "opposing party" to the party sought to be barred in the present action. *See* Fed.R.Civ.P. 13(a). Beech seeks to avoid that difficulty by contending that its interest is so intertwined with that of BACI in the Kansas action that it should be treated as an "opposing party" for compulsory counterclaim purposes. There are circumstances under which a sufficiently proven identity of interest might have that effect, *see, e.g., Establissement Tomis v. Shearson Hayden Stone, Inc.,* 459 F.Supp. 1355, 1365 (S.D.N.Y.1978) (holding that a corporation and its president have, in certain circumstances, a sufficient identity of interest for Rule 13(a) purposes), but we are not prepared to address that possibility here. There are substantial questions of fact outstanding that make this wholly inappropriate. The most important of course is the exact relationship, for these purposes, between Beech and BACI.

As to this, both of the parties seem on the present record equally to be blowing hot and cold. In the present action, Fullerton seeks to hold BACI to Beech's warranty by contending that BACI is Beech's alter ego; while Beech and BACI counter that they are separate and distinct corporate entities. On the other hand, in dealing with the compulsory counterclaim defense, the parties seem completely to reverse these positions. Beech claims that its interest is so intertwined with BACI's in the suit on the purchase money note that the two should be treated in effect as one for compulsory counterclaim purposes; while Fullerton contends that the relationship is not such as to justify treating the non-party Beech as effectively an "opposing party" in that action.

The legal relevance of the actual relationship between these parties on these two issues is at best murky on the present record; the actual relationship is hopelessly obscure factually in view of the parties' shifting positions. This is a muddle that must simply be addressed by the district court if the compulsory counterclaim defense is pressed on remand either as a basis for outright bar, or for a stay or similar relief if the Kansas action is still pending.

One further complexity bearing upon this relationship may be identified as a matter better disentangled by the district court. It has to do with BACI's separate situation vis-a-vis Fullerton's breach of warranty claim and the defendants' joint compulsory counterclaim defense. BACI's exposure to the warranty claim, is, as indicated, apparently dependent upon whether it is, as Fullerton claims on this issue, the *alter ego* of Beech, the actual warrantor. It would seem appropriate, though we leave this to the district court, first to address that issue. If BACI prevails upon it, that will of course wash out any necessity to consider whether BACI, which obviously is an "opposing party" in the Kansas action should prevail on the compulsory counterclaim defense, assuming it has ripened.

### IV

In sum, we hold that the district court erred in granting summary judgment to the defendants alternatively on collateral estoppel and lack of privity grounds. We therefore reverse and remand for further proceedings consistent with this opinion, including consideration of the defendants' unresolved compulsory counterclaim defense.

SO ORDERED.