FULL FAITH CHURCH OF LOVE
WEST, INC., Plaintiff,

v.

HOOVER TREATED WOOD
PRODUCTS, INC., et al.,
Defendants.

No. Civ.A. 01–2597–KHV.

United States District Court, D. Kansas.

Sept. 26, 2002.

Michael B. Lowe, Christopher J. Sherman, Payne & Jones, Chtd., Overland Park, KS, Scott C. Long, McCormick, Adam & Long, PA., Overland Park, KS, for plaintiff.

Paul S. Penticuff, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, Timothy J. Sear, Kevin J. Breer, Polsinelli Shalton & Welte, P.C., Overland Park, KS, Patrick J. Perrone, Nicole A. Corona, McCarter & English, LLP, Newark, NJ, for Hoover Treated Wood Products, Inc., defendant.

Paul S. Penticuff, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for Hoover Universal, Inc., defendant.

Leo L. Logan, Holman Hansen Colville & Coates, P.C., Overland Park, KS, T. Gregory Slother, John J. Kozak, Tampa, FL, for Osmose, Inc., defendant.

Michael P. Oliver, Wallace, Saunders, Austin, Borwn & Enochs, Chartered, Overland Park, KS, for Chemical Specialties, Inc., defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Full Faith Church of Love West, Inc. ("Full Faith") brings suit against Hoover Treated Wood Products, Inc. ("Hoover Wood"), Hoover Universal, Inc. ("Hoover Universal"), Osmose, Inc. and Chemical Specialties, Inc. ("CSI") for breach of warranties, negligence, strict liability, negligent misrepresentation and fraud. Specifically, Full Faith claims that defendants manufactured fire retardant chemical products which caused its roof structure to decay and loose strength. This matter comes before the Court on *Defendants' Joint Motion To Dismiss First Amended Complaint For Failure To State Claims Upon Which Relief Can Be Granted And For Failure To Plead Fraud With Particularity* (Doc. # 24) filed March 11, 2002. For reasons stated below, the Court sustains defendants' motion in part.

### I. Legal Standards

In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well pleaded facts in the amended complaint and views them in a light most favorable to plaintiff. *See Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The Court makes all reasonable inferences in favor of plaintiff, and liberally construes the pleadings. *See* Rule 8(a), Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colo.,* 988 F.2d 97, 98 (10th Cir. 1993). The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of its theories of recovery that would entitle it to relief. *See Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.,* 927 F.2d 1111, 1115 (10th Cir.1991). Although plaintiff

need not precisely state each element of its claims, plaintiff must plead minimal factual allegations on material elements that must be proved. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

In addition, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of Rule 9(b) is to enable a defending party to prepare an effective response to charges of fraud and to protect the defending party from unfounded charges of wrongdoing which might injure its reputation and goodwill. *See N.L. Indus., Inc. v. Gulf & Western Indus., Inc.,* 650 F.Supp. 1115, 1129–30 (D.Kan.1986). The Court must read Rule 9(b) in harmony with the simplified notice pleading provisions of Rule 8. *See Cayman Explor. Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1362 (10th Cir.1989). Thus, to plead a fraud claim, plaintiff must describe the circumstances of the fraud, *i.e.* the time, place, and content of the false representation; the identity of the person making the representation; and the harm caused by plaintiff's reliance on the false representation. *See Smith v. MCI Telecomms. Corp.,* 678 F.Supp. 823, 825 (D.Kan.1987). Stated differently, Rule 9(b) requires plaintiff to set forth the "who, what, where, and when" of the alleged fraud. *Nal II, Ltd. v. Tonkin,* 705 F.Supp. 522, 525–26 (D.Kan.1989).

## II. Facts

Full Faith alleges the following facts:

Full Faith owns and operates a church complex in Shawnee, Kansas. The complex includes a worship facility, an elemen-tary education wing, a high school addition and an administrative addition. Full Faith constructed the elementary wing in 1985. In 1988, it built the high school and administrative additions. The roofs of the elementary wing and the high school and administrative additions (collectively, the "Full Faith facilities") are composed of wood roof trusses that are covered by plywood sheathing. The roof trusses and plywood sheathing are essential to the roof structure.

The roof truss lumber and the plywood sheathing were treated with fire retardant chemical products manufactured by Hoover Wood, Hoover Universal, Osmose and CSI (collectively, the "defendants").[1] The products were defective and caused the treated lumber and plywood to decay and lose strength under normal roof conditions, causing substantial damage to the roof structure at the Full Faith facilities. The deterioration of the treated wood was latent and hidden. Full Faith could not have discovered the deterioration until long after it constructed the facilities. The deterioration has caused or will cause the roofs to collapse, and it renders or will render the facilities unsafe and unreasonably dangerous.

As a result of the deterioration, Full Faith has incurred and will continue to incur costs to (1) inspect and test the roof system; (2) design and repair the roof structure; (3) repair and replace other property which has been damaged as a result of the deterioration; and (4) relocate students and staff during roof repairs and periods in which the facilities are unsafe for occupation.

---

1. Plaintiff does not allege who treated the wood. In *Pulte Home Corp. v. Osmose Wood Preserving, Inc.,* 60 F.3d 734, 736–37 (11th Cir.1995), the Eleventh Circuit noted that fire retardant chemical manufacturers typically specify procedures for suppliers to treat plywood and that after treatment, suppliers stamp each sheet of plywood to certify that the wood has been treated with the fire retardant chemicals of a particular manufacturer.

Defendants sell fire retardant chemicals which ordinarily are used to treat lumber and plywood for roof trusses and sheathing in commercial buildings such as the Full Faith facilities. Defendants knew that their products would be used for such purposes and they impliedly warranted that their products were fit for such purposes. Defendants' products, however, were not fit for such purposes: they were not merchantable, would not pass without objection in the trade and were not fit for the ordinary purposes for which such products are used. The products were defective at the time defendants possessed them, and Full Faith received them in substantially the same condition in which defendants sold them.

Full Faith relied on defendants' skill and judgment to furnish suitable goods. Defendants expressly warranted to Full Faith that treated wood was fit to use in roof trusses and sheathing and that it would retain its structural integrity to the same extent and duration as untreated wood. Defendants specifically warranted that treated wood would perform after it was sold. Defendants concealed the defective nature of their products, which prevented Full Faith from discovering the breaches of implied and express warranties. Full Faith notified defendants within a reasonable time after it discovered the breaches.

Defendants had a duty to exercise reasonable care in the design, manufacture, marketing, sale and selection of treated wood. Defendants knew or should have known of the defective condition of treated wood and they had a duty to warn Full Faith of that condition. Defendants breached these duties, creating a clear and present risk of (1) death or serious personal injury to occupants of the facilities; (2) serious property damage (including substantial impairment to the integrity of the roof); and (3) loss of value and use of the facilities.

Defendants had a duty to provide complete and accurate information regarding their chemicals, but they negligently made false representations and failed to disclose that (1) premature deterioration of treated wood was possible; (2) their chemical products were not suitable for treating wood in roof trusses and sheathing; (3) they had not tested the durability of treated wood in roof trusses and sheathing; (4) others had complained of treated wood failure in roof structures; and (5) defendants' own tests showed that treated plywood loses significant strength under normal conditions. Full Faith justifiably relied upon defendants' misrepresentations and failures to disclose. Defendants knew or should have known that Full Faith was likely to rely thereon and that such reliance might cause loss or injury.

From 1982 to 1988, while Full Faith was planning and constructing the facilities, each defendant made false representations of existing material fact regarding the strength and durability of treated wood and its fitness for use in roof structures. Specifically, defendants falsely represented that treated wood would perform to the same extent and duration as untreated wood, and that treated wood was suitable for use in roof construction. Each defendant made such representations in advertisements, circulars, brochures and other publications which were published, distributed or otherwise available to the public during this time. Defendants intentionally made the representations to induce others to act upon them. Defendants knew that the representations were false or made them recklessly, without knowledge concerning them. Defendants had material information that treated wood would not maintain its structural integrity to the same extent as untreated wood and that treated wood was not fit for use in roof construction. Defendants had an obligation to disclose these facts to Full Faith

and intentionally failed to do so. Full Faith did not have knowledge of the facts and could not have discovered them through due diligence.

In selecting and purchasing treated wood, Full Faith reasonably relied upon defendants' advertisements, circulars, brochures and other representations. In addition, Full Faith reasonably relied upon defendants to communicate and disclose all material facts concerning the performance of treated wood and its suitability for use in roof construction. Full Faith has sustained damages as a direct and proximate cause of defendants' conduct.

### III. Analysis

Plaintiff alleges breach of implied warranty of merchantability (Count I), breach of implied warranty of fitness for a particular purpose (Count II), breach of express warranty (Count III), negligence (Count IV), strict liability (Count V), negligent misrepresentation (Count VI) and fraud (Count VII). Defendants urge the Court to dismiss the tort and strict liability claims (Counts IV, V and VI) because plaintiff has suffered only economic loss. In addition, defendants seek to dismiss the breach of warranty claims (Counts I, II and III) because Article 2 of the Uniform Commercial Code ("UCC"), K.S.A. § 84–2–101 *et seq.*, does not apply to construction contracts or realty purchases. Alternatively, defendants assert that plaintiff's breach of warranty claims are barred by a four-year statute of limitations and by plaintiff's lack of privity with defendants. Finally, defendants argue that plaintiff has failed to plead fraud (Count VII) with particularity.

#### A. Tort And Strict Liability (Counts IV, V and VI)

Defendants assert that plaintiff cannot prevail on negligent and strict liability claims because it has suffered only economic damages. In *Koss Constr. v. Cater-*pillar, Inc., 25 Kan.App.2d 200, 960 P.2d 255 (1998), the Kansas Court of Appeals adopted the economic loss rule set forth in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In doing so, the Kansas Court of Appeals held that "a commercial buyer of defective goods cannot sue in negligence or strict liability where the only injury consists of damage to the goods themselves." *Koss*, 25 Kan.App.2d at 207, 960 P.2d at 260. In *Jordan v. Case Corp.*, 26 Kan.App.2d 742, 744, 993 P.2d 650, 652 (1999), the Kansas Court of Appeals extended the economic loss doctrine to consumer transactions. The Kansas Supreme Court has not addressed the issue, but this Court has no reason to believe that it not would follow the decisions of the Kansas Court of Appeals.

Defendants argue that plaintiff's damages consist solely of economic loss: the cost to repair and replace the treated wood. In *Northwest Ark. Masonry, Inc. v. Summit Specialty Prods., Inc.*, 29 Kan. App.2d 735, 31 P.3d 982, 987 (2001), the Kansas Court of Appeals recognized that the economic loss doctrine does not preclude recovery for physical damage to "other property." To determine whether a product has caused damage to "other property," the court adopted the "integrated system" approach. Under this approach, damage to a final product does not constitute damage to "other property" if a defective product is part of an integrated system which is composed of several component materials that are indistinguishable from the final product. *See id.* at 988. Applying this approach, the *Northwest* court found that defective cement which had damaged a masonry wall was part of an integrated system and that the economic loss doctrine barred plaintiff from recovering the cost of additional materials required to repair and replace the wall. *See id.* at 988–89.

The *Northwest* court cited with approval *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 742 (11th Cir. 1995), which had facts similar to this case. In *Pulte*, the Eleventh Circuit Court of Appeals ruled that the cost to remove and replace other components of a roof system did not constitute damages to "other property" where the builder had to replace treated plywood that had failed to maintain its strength and structural integrity. *See Northwest*, 31 P.3d at 988 (citing *Pulte*, 60 F.3d at 742).

Plaintiff responds that it has suffered damage to property other than the roof structure. The complaint alleges that plaintiff has incurred costs to (1) inspect and test the existing roof system; (2) design and repair the existing roof structure; (3) repair and replace other property damaged as a result of the treated wood deterioration; and (4) relocate students and staff during roof repairs and during periods in which the facilities are unsafe. *See First Amended Petition* (Doc. # 15) filed February 15, 2002, ¶ 18. The *Northwest* holding precludes the first, second and fourth categories of damages. *See Northwest*, 31 P.3d at 987 (economic loss includes damages for inadequate value, costs of repair, replacement and loss of use of defective product). The *Northwest* ruling, however, does not bar the third category of damages: costs to repair and replace *other property* which has been damaged on account of the treated wood failure. *See Northwest*, 31 P.3d at 987 (economic loss doctrine not preclude recovery for physical damages to "other property"); *see also Elite Prof., Inc. v. Carrier Corp.*, 16 Kan. App.2d 625, 633, 827 P.2d 1195, 1202

(1992). In ruling on defendants' motion to dismiss the Court must assume that plaintiff's allegations are true, *i.e.* that the treated wood deterioration caused physical damage to "other property." Thus, to the extent that plaintiff seeks costs to repair and replace "other property" which has been damaged as a result of the treated wood failure, the Court will not dismiss plaintiff's negligent and strict liability claims.

Plaintiff argues that the economic loss doctrine does not apply because it does not claim that the treated wood failed to perform its intended function. According to plaintiff, its claim that defendants' chemicals caused the wood to erode and lose strength is unrelated to the products' intended function of fire protection. Initially, the Court notes that this argument is inconsistent with plaintiff's allegations that fire protection without loss of wood strength and durability was an intended function of defendants' products. *See First Amended Complaint* at 4–10.[2]

In addition, plaintiff has not shown that Kansas courts would recognize an exception to the economic loss rule in this case. Plaintiff cites two asbestos cases under Minnesota law: *Indep. Sch. Dist. No. 197 v. W.R. Grace & Co.*, 752 F.Supp. 286 (D.Minn.1990), and *T.H.S Northstar Assoc., Ltd. v. W.R. Grace & Co.*, 767 F.Supp. 969 (D.Minn.1991). Those courts recognized an exception to the economic loss rule "in limited situations where the nature of the defect or damage is other than that which could ordinarily be contemplated by the parties to a commercial transaction." *T.H.S. Northstar*, 767 F.Supp. at 972–73

---

**2.** The complaint states that: (1) defendants knew that their chemicals were ordinarily used to treat wood for roof trusses and sheathing in commercial buildings; (2) defendants impliedly and expressly warranted that their chemicals were fit for the purpose of treating wood in roof trusses and sheathing;

(3) defendants expressly warranted that treated wood would retain its structural integrity to the same extent and duration as untreated wood; and (4) defendants falsely represented that treated wood was suitable for use in roof construction. *See First Amended Complaint* ¶¶ 21, 28, 29, 35 and 60.

(quoting *Holstad v. Southwestern Porcelain, Inc.*, 421 N.W.2d 371, 375 (Minn.Ct. App.1988)); *see Indep.Sch.*, 752 F.Supp. at 300 (economic loss allowed in "unusual claim for damages which can be seen as separate and apart from ordinary risk of a commercial transaction") (quotation and citation omitted). In *Indep.Sch.* and *Northstar*, the plaintiffs sought to recover the cost to remove and replace asbestos materials. In allowing a limited exception to the economic loss doctrine, the Minnesota courts reasoned that plaintiffs did not complain that the asbestos materials had failed to perform to the level expected. Rather, they alleged that the asbestos products released hazardous material which contaminated entire buildings and exposed persons within them to an unreasonable risk of injury. *See Indep.Sch.*, 752 F.Supp. at 301–02; *Northstar*, 767 F.Supp. at 973–74. One court noted: "[a] key factor for the courts analyzing asbestos building cases is that the damage claimed in such cases is not related to the failure of the product to perform, but to the alleged tendency of the product to release hazardous material in the environment." *Indep.Sch.*, 752 F.Supp. at 301. Here, plaintiff alleges that the treated wood has caused or may cause the roof to collapse. Even if true, however, this allegation does not constitute a type of defect which the parties could not ordinarily contemplate in a commercial transaction. Therefore, the limited exception recognized by the Minnesota courts does not apply in this case.

Plaintiff urges the Court to recognize an exception for unreasonably dangerous products. In *Koss*, however, the Kansas Court of Appeals specifically rejected such an exception:

> Koss emphasizes that in this case the damages occurred as a result of a calamitous event, arguing that the hydraulic hoses were unreasonably dangerous. As noted above, however, the [United States] Supreme Court expressly reject-

ed an attempt to distinguish between cases based on the manner in which the product is injured. [*East River*, 476 U.S. at 872, 106 S.Ct. 2295.] Regardless of how it occurs, damage which is limited to the defective product itself is essentially economic loss.

*Koss*, 25 Kan.App.2d at 206–07, 960 P.2d at 259–60.

■ Finally, plaintiff asserts that Kansas courts have not extended the economic loss doctrine to negligent misrepresentation claims. This Court, however, has repeatedly ruled that the economic loss rule applies to negligent misrepresentation claims in product liability cases under Kansas law. *See Graphic Tech., Inc. v. Pitney Bowes Inc.*, 968 F.Supp. 602, 608 (D.Kan.1997); *Kelley Metal Trading Co. v. Al–Jon/United, Inc.*, 812 F.Supp. 185, 188 (D.Kan.1993); *Nature's Share, Inc. v. Kutter Prod., Inc.*, 752 F.Supp. 371, 382 (D.Kan.1990); *Ritchie Enter. v. Honeywell Bull, Inc.*, 730 F.Supp. 1041, 1052 (D.Kan. 1990). The Court concludes that the economic loss doctrine precludes plaintiff's claims for damages relating to the costs to inspect and test the existing roof system, design and repair the existing roof structure and relocate students and staff during roof repairs and during periods in which the Full Faith facilities are unsafe, as stated in Counts IV, V and VI. The economic loss doctrine, however, does not bar plaintiff's effort to recover costs which it incurred to repair and replace "other property" which was damaged by defendants' products.

### B. Breach Of Warranties (Counts I, II and III)

#### 1. UCC Scope/Privity

Defendants argue that Article 2 of the Kansas UCC, K.S.A. § 84–2–101 *et seq.*, does not apply to plaintiff's warranty claims because plaintiff contracted for the

construction or purchase of a church complex, not the sale of goods.[3] Plaintiff agrees that Article 2 does not apply to construction or real estate contracts but contends that its warranty claims are based on the sale of defendants' products to the original purchasers—not plaintiff's contract with its builders. Thus the relevant issue is not whether Article 2 applies, but whether plaintiff is entitled to enforce the warranties.

Defendants argue that plaintiff cannot bring implied warranty claims (Counts I and II) because it lacks contractual privity with defendants. Plaintiff responds that privity is not required because defendants' products were inherently dangerous. Based on public policy, Kansas law extends implied warranties to "non-privity manufacturers whose inherently dangerous products cause physical injuries to buyers." *Prof. Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 754, 675 P.2d 887, 898 (1984). The rule is limited, however, to cases where the defective product causes physical injury. *See id.* at 746–54, 675 P.2d at 891–98; K.S.A. § 84–2–318; *Koss*, 25 Kan.App.2d at 208, 960 P.2d at 260.

■ Plaintiff urges the Court to follow *Fullerton Aircraft Sales & Rentals, Inc. v. Beech Aircraft Corp.*, 842 F.2d 717 (4th Cir.1988). In *Fullerton*, the Fourth Circuit Court of Appeals determined that Kansas law would not require privity in an implied warranty action to recover economic loss if the defective product was inherently dangerous. *See id.* at 721. After *Fullerton*, however, the Kansas Court of Appeals ruled that one cannot circumvent the privity requirement unless the unreasonably

dangerous product causes physical injuries. *See Koss*, 25 Kan.App.2d at 208, 960 P.2d at 260. The Court believes that the Kansas Supreme Court would follow *Koss*. Accordingly, it dismisses plaintiff's implied warranty claims (Counts I and II) for lack of privity.

## 2. Statute Of Limitations

Defendants assert that the UCC's four-year statute of limitations bars plaintiff's express warranty claim (Count III).[4] *See* K.S.A. § 84–2–725. Plaintiff alleges that defendants made two express warranties: (1) that treated wood was fit for use in roof trusses; and (2) that treated wood "would retain its structural integrity to the same extent and duration as untreated lumber and plywood." *First Amended Petition For Damages* ¶ 35. Plaintiff asserts that the second express warranty constitutes a warranty for future performance which is timely under K.S.A. § 84–2–725(2). Section 84–2–725(2) provides that a cause of action for breach of warranty accrues "when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." K.S.A. § 84–2–725(2).

■ Defendants argue that a future warranty must refer to a specific date in the future. In *Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 652, 545 P.2d 371, 378 (1976), the Kansas Supreme Court found that in order to constitute a warranty of future performance, the alleged warranty must explicitly extend to the future performance of the product and the discovery of

---

**3.** Article 2 applies to "transactions in goods." K.S.A. § 84–2–102. It defines "goods" as "all things . . . which are moveable at the time of identification of the contract for sale. . . ." K.S.A. § 84–2–105(1).

**4.** Defendant argues that the statute of limitations bars both the implied and express warranty claims. Because plaintiff lacks standing to assert implied warranty claims, the argument is moot with respect to such claims.

the breach must have awaited the time of such performance. Plaintiff alleges that defendants expressly warranted that treated wood "would retain its structural integrity to the same extent and duration as untreated lumber and plywood." *First Amended Petition For Damages* ¶ 35. Assuming plaintiff's allegation to be true, the alleged warranty explicitly extends to future performance—the ability of the treated wood to retain structural integrity in the future. *Compare Voth*, 218 Kan. at 648, 545 P.2d at 375 (warranty to replace or repair defective part does not warrant performance). Moreover, the warranty supplies a specific time frame—the same duration as untreated wood—which plaintiff presumably can establish with evidence at trial. *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 880–81 (8th Cir.2000). Finally, plaintiff could not discover a breach of the warranty until the time of such performance. *See Voth*, 218 Kan. at 652, 545 P.2d at 378 (citing *Mittasch v. Seal Lock Burial Vault, Inc.*, 42 A.D.2d 573, 344 N.Y.S.2d 101 (N.Y.App. Div.1973)). Accordingly, plaintiff has stated a claim for breach of warranty of future performance.

With respect to the first express warranty, plaintiff agrees that a four-year limitations period applies but argues that its claim should be equitable tolled. In order to equitably toll a claim under Kansas law, plaintiff must show that

> [defendants] by [their] acts, representations, admissions, or silence when [they] had a duty to speak, induced [plaintiff] to believe certain facts existed. [Plaintiff] must also show that it rightfully relied and acted upon such belief and would now be prejudiced if [defendants] were permitted to deny the existence of such facts

*Rockers v. Kan. Turnpike Auth.*, 268 Kan. 110, 116, 991 P.2d 889, 894 (1999) (quoting *United Am. State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792, 795 (1977)).

■ Defendants argue that plaintiff has not pleaded equitable tolling with particularity under Rule 9(b), Fed.R.Civ.P. Under Kansas law, however, fraud is not an essential element to equitable tolling. *See Rex v. Warner*, 183 Kan. 763, 771, 332 P.2d 572, 579 (1958). Therefore the heightened pleading requirement does not apply. *Compare Ballen v. Prudential Bache Secs., Inc.*, 23 F.3d 335, 336–37 (10th Cir. 1994) (plaintiff must plead first element of federal tolling—use of fraudulent means—with particularity).

■ Because the dates in the complaint establish that the first express warranty claim is time barred,[5] plaintiff has the burden to establish a factual basis to toll the statute. *See Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir.1980). Plaintiff alleges that (1) defendants had a duty to provide complete and accurate information regarding their chemicals; (2) defendants concealed, misrepresented and failed to disclose the defective nature of their products; (3) Full Faith justifiably relied upon defendants' misrepresentations and failures to disclose; (4) defendants' actions caused Full Faith to not discover the breaches of express warranties; and (5) Full Faith notified defendants within a reasonable time after it discovered the breaches. Assuming that these allegations are true, plaintiff has sufficiently established a factual basis for equitable tolling for purposes of defendants' motion to dismiss. *See id.* at 1042. Therefore the Court will not dismiss plaintiff's express warranty claims in Count III.

---

**5.** Plaintiff constructed the facilities in 1985 and 1988 and did not file suit until 2001. *See First Amended Petition For Damages* (Doc. # 15) ¶¶ 10 and 11.

### C. Fraud (Count VII)

Defendants contend that plaintiff has not pleaded fraud with particularity. To meet the particularity requirements of Rule 9(b), the complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir.1991)).

Plaintiff alleges that:

60. Each Defendant made false representations of existing material facts concerning the strength and durability of TREATED lumber and plywood and its fitness for use in roofs. Specifically, Defendants falsely represented that TREATED lumber and plywood would perform to the same extent and duration as untreated wood and that TREATED lumber and plywood was suitable for use in the construction of roofs.

61. Each Defendant made such representations in advertisements, circulars, brochures and other publications, published, distributed, or otherwise available to the public during the period of time when planning for the construction of the elementary education, high school, and administrative additions of the Full Faith Facilities were ongoing (1982–1988). \*\*\*

64. Full Faith and others acting on its behalf reasonably relied and acted upon Defendants' representation in their advertisements, circulars, brochures and other representations by purchasing TREATED lumber and Plywood [sic] for use in the construction of the Full Faith Facilities, or causing other [sic] to purchase TREATED plywood on its behalf.

*First Amended Petition For Damages* (Doc. # 15) ¶¶ 60, 61 and 64.

While plaintiff has sufficiently alleged the contents of the false representations and consequences thereof, it has not sufficiently articulated the circumstances surrounding the misrepresentations. *See Plastic Pkg. Corp. v. Sun Chem. Corp.*, 136 F.Supp.2d 1201, 1204 (D.Kan.2001). For instance, plaintiff's statement that defendants made "ongoing" representations between 1982 and 1988 does not alert defendants to a sufficiently precise time frame under Rule 9(b). *See Koch v. Koch Ind., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (statement that defendants made misrepresentations from 1982 to present insufficient). Likewise, plaintiff's broad allegation that each defendant made false representations "in advertisements, circulars, brochures and other publications, published, distributed, or otherwise available to the public" is not sufficient to alert each defendant of the precise manner in which it allegedly made the misrepresentations. *See Koch,* 203 F.3d at 1237; *compare Schwartz,* 124 F.3d at 1252 (complaint specifically identified documents, press releases and other communications which contained false statements). Thus plaintiff has failed to plead fraud with sufficient particularity under Rule 9(b) and the Court sustains defendants' motion to dismiss Count VII.

**IT IS THEREFORE ORDERED** that *Defendants' Joint Motion To Dismiss First Amended Complaint For Failure To State Claims Upon Which Relief Can Be Granted And For Failure To Plead Fraud With Particularity* (Doc. # 24) filed March 11, 2002 be and hereby is **SUSTAINED in part.** The Court dismisses plaintiff's claims for breach of implied warranty of merchantability (Count I), breach of implied warranty of fitness for a particular purpose (Count II) and fraud (Count VII). Also, the Court limits plaintiff's recoverable damages for negligence (Count IV), strict liability (Count V) and negligent mis-

representation (Count VI) to costs to repair and replace "other property" damaged as a result of the alleged treated wood deterioration. In addition to these limited damage claims, plaintiff's claim for breach of express warranty (Count II) remains in the case.