KICE INDUSTRIES, INC., Plaintiff,

v.

AWC COATINGS, INC., the Glidden Company, d/b/a ICI Paints, and Insl–X Products Corp., Defendants.

No. 01–1359–JTM.

United States District Court, D. Kansas.

April 3, 2003.

J. Michael Kennalley, Jeffrey B. Hurt, Martin & Churchill, Wichita, KS, Wichita, KS, for Plaintiff.

J. Eugene Balloun, Shook, Hardy & Bacon L.L.P., Overland Park, KS, B. Kirsten Ehlen Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

MARTEN, District Judge.

The present case involves allegedly defective paint. Plaintiff Kice Industries has brought the action against defendants AWC Coatings, Inc., The Glidden Company and Insl–X Products Corporation. Glidden and Insl–X are manufacturers of paint. AWC sells paint. Kice alleges that both Glidden and Insl–X are liable for negligence and breach of implied warranty of merchantability, and that Glidden is additionally liable for negligent misrepresentation, for breach of express warranty, and for breach of implied warranty of fitness for a particular purpose. Glidden and Insl–X have filed a joint motion for summary judgment, seeking dismissal of the negligence and implied warranty claims.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance.

*Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial.**' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita* ). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Kice makes pneumatic conveying systems for flour and cereal grain processors and other industries. Although neither primer nor paint are necessary to the actual function or operation of plaintiff's systems, many are made of metal that is subject to rust damage. For that reason, those metal surfaces which are subject to rust damage are ordinarily primed and painted before plaintiff's products are delivered to its customers to protect those surfaces from such damage. If the paint

applied to plaintiff's products fails to adhere to the surface of the products or otherwise fails to protect the metal surfaces of plaintiff's products, rust and damage therefrom will result and can create hazards to individuals. In order to protect its products from this damage, plaintiff had used Porter paint products until 1998.

In 1998, Kice decided to change from using the Porter paint products, then being used to paint its products, to paint manufactured by some other company. Its representatives began to identify some potential paint vendors. Its representative contacted defendant Dennis Schmidt of AWC asking for a bid. Kice received information from AWC concerning the estimated annual cost to plaintiff of using Devoe paint, which AWC has marketed since the previous year. Dennis Schmidt twice arranged to have Devoe paint tested at Kice's facilities by its painters.

Kice switched to Devoe paint and primer, which it continued to use until it changed to Sherwin/Williams paint products in March, 2001.

Kice alleges AWC supplied it with Devoe paint and primer products manufactured by Glidden or Insl–X at various times during 2000. It also alleges a defect in the paint products caused the paint to crack and peel after application to Kice's manufactured products. Kice alleges the following damages: (1) $66,874.22 in actual damages to date for repairing defective paint jobs; (2) approximately $146,000.00 for the expected actual damages for paint jobs known to be defective that Kice must repair; (3) $574,000.00 for anticipated repairs; (4) $58,616.27 to compensate for the cost of buying the defective paint; (5) and $2 million for loss of good will.

Tim Kice, plaintiff's production manager, contacted Daniels of Glidden when the problems with the product became evident. David Allmand, Glidden's Devoe representative, visited plaintiff's site at the first notice by plaintiff of a problem with the paint products.

The paint products have not caused any personal injury. Kice has not communicated orally or in writing with Insl–X regarding this lawsuit. Finally, it is uncontroverted that Kice's painters wear no safety equipment when painting.

AWC and Kice stress that an employee of Glidden, Mike Daniels, visited Kice's plant and participated in test painting and explaining properties of the paint products and application procedures prior to Kice's decision to buy the paint. Although AWC asserts that Kice relied on Glidden's agents in deciding to buy the paint, it merely cites Kice's Third Amended Complaint (at ¶ 32, 40); it does not cite any admissible evidence in support of the assertion. Similarly, although Kice also asserts that Daniels's visits to its plant played a role in the decision to switch to Devoe paint, this assertion is similarly unsupported by admissible evidence. Ed Kice, plaintiff's vice president of production who made the decision to buy the Devoe paint, testified in his deposition that he did not deal with anyone from Glidden or Insl–X in making his decision. Daniels, in his visit to Kice's plant, met with Floyd Porter, Kice's paint supervisor; Porter has testified he played no role in Kice's decision to switch to Devoe paint.

Daniels continued to have contact with Kice's employees and to offer suggestions and advice on application of the paint products. Daniels made representations on how to apply the Devoe products, and told Porter that the Devoe topcoat could be applied over the Devoe primer when the primer was dry to the touch.

Cynthia L. Fairfull of KTA–TATOR, Inc., has prepared an expert report on the paint, dated July 18, 2001. She indicates that the metal vessel from which the paint samples were taken was "corroding in ar-

eas where the coating was delaminating." (AWC Resp. Exh. C, at 2). She also noted, regarding the paint chips that were removed from the metal vessel, that "[t]he front of the chips was off-white and the back was brown. The brown back coat had a thin layer of corrosion over an orange coating." (*Id.*).

Glidden and Insl–X seek summary judgment on the negligence claims because Kice's claims involve only economic damages, and thus recovery may not be had in tort. They seek summary judgment on the implied warranty claims on the grounds that while they may have manufactured the paint products, they did not market the products to Kice. In opposition to the summary judgment motion, Kice and AWC argue that the economic loss doctrine is inapplicable, because the allegedly defective paint caused damage to "other property" beyond the paint itself. That is, they contend that because the paint was defective, it caused rust to the products which were painted. Kice and AWC contend that the implied warranty claims are appropriate, because the manufacturer defendants were not "remote" sellers of the product, but actively participated in the sales and marketing of the paint to Kice.

■ The court will dismiss plaintiff's implied warranty claims. Implied warranties of fitness or merchantability, for products not inherently dangerous, are not extended from a manufacturer of a product to a remote purchaser for economic losses, where the parties are not in privity. *Professional Lens Plan, Inc. v. Polaris Leasing*, 675 P.2d 887, 234 Kan. 742 (1984). It is uncontroverted here that Kice is not in privity with either Glidden or Insl–X. AWC and Kice's argument that the moving defendants are not "remote" fails in the light of the evidence before the court. First, the nonmovants fail to provide *any* evidence which would suggest that Insl–X

is anything other than a remote manufacturer; all of their arguments center only on Glidden. And, as to Glidden, it is established that Glidden's contacts with Kice played no role in causing Kice to purchase Glidden's products. Porter, the only person who remembers meeting Glidden's representative (Daniels) has also testified that he (Porter) played no role in Kice's decision to buy the Glidden products. That decision was made by Ed Kice, who has testified that he had no contacts or communications with Daniels. The nonmovants' argument fails on the facts.

■ Moreover, the nonmovants' arguments relating to implied warranty fail to provide any authority indicating that an absence of "remoteness" may be considered a substitute for the requirement of privity. Courts have repeatedly stated that privity is a requirement for warranty actions. *See Owens–Corning Fiberglas Corp. v. Sonic Dev. Corp.*, 546 F.Supp. 533, 541 (D.Kan.1982). Here, it is uncontroverted that the movants are not in privity with Kice. Nor is there any basis in the evidence for concluding that the paint products in question are inherently dangerous, and thus would fall within a recognized exception to the privity requirement.

■ The court finds as well that Kice's claims sounding in negligence should also be dismissed. Under the economic loss doctrine, "a commercial buyer of defective goods cannot sue in negligence or strict liability where the only injury consists of damage to the goods themselves." *Koss Construction v. Caterpillar, Inc.*, 960 P.2d 255, 25 Kan.App.2d 200, 207 (1998). This court has previously applied the doctrine in *Ministic Air Ltd. v. Raytheon Aircraft Co.*, Case No. 99–1493–JTM, 2001 WL 309400 (D.Kan. March 20, 2001) (noting also that the doctrine barred plaintiff's claim even though it was couched as negligent misrepresentation).

 Of course, the economic loss doctrine does not preclude recovery for physical damage to "other property." *Northwest Ark. Masonry, Inc. v. Summit Specialty Prods., Inc.*, 29 Kan.App.2d 735, 31 P.3d 982, 987 (2001). In that case, in determining whether the allegedly defective product had damaged "other property," the Kansas Court of Appeals utilized an "integrated system" under which damage will not be considered damage to "other property" if the defective product is part of an integrated system which is composed of several component materials that are indistinguishable from the final product. *Id.* at 988. The court held that allegedly defective cement which resulted in a damaged masonry wall was part of an integrated system, and that the economic loss doctrine applied. *See also Full Faith Church of Love West, Inc. v. Hoover Treated Wood Products, Inc.*, 224 F.Supp.2d 1285, 48 UCC Rep.Serv.2d 1331 (D.Kan.2002). In *Full Faith Church*, the court held that decay damage to wooden support trusses—allegedly caused by application of defective flame-retardant chemicals—did not escape application of the economic loss doctrine.

The allegedly damaged production equipment here is directly analogous to the damaged wall in *Northwest Ark. Masonry* or the wood trusses coated with fire retardant chemicals in *Full Faith Church.* In those cases, as in this, the allegedly defective product was simply one ingredient in a larger, integrated system. Accordingly, summary judgment on the implied warranty claims is appropriate.

The court notes that defendant AWC has requested a stay of determination relating to the motion for summary judgment, and has requested oral argument on the motion. The court has reviewed all of the pleadings and the accompanying evidentiary materials, and concludes that oral argument would not materially assist in the resolution of the matters pending before the court. In addition, the court finds no just reason for delaying a ruling on the motion for summary judgment.

IT IS ACCORDINGLY ORDERED this 3d day of April, 2003, that the Motion for Summary Judgment of the defendants Glidden and Insl–X (Dkt. No. 70) is hereby granted. Defendant AWC's Motion to Stay (Dkt.No.101) is denied. Plaintiff's request for oral argument (Dkt. No. 99), and defendant AWC's request for oral argument (Dkt. No. 100) are denied.